Lois D. QUINN

v.

Thomas H. QUINN.

No. 84–91–Appeal.

Supreme Court of Rhode Island.

July 14, 1986.

Jerry L. McIntyre, Edwards & Angell, Providence, for plaintiff.

Howard I. Lipsey, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by Thomas H. Quinn (husband) from an interlocutory decree entered in the Family Court granting the petition of Lois D. Quinn (wife) and the husband's cross-petition for absolute divorce on the grounds of irreconcilable differences. We affirm.

The parties were married on August 12, 1952. Two children, both of whom have since attained the age of majority, were born of the marriage. From 1952 until 1978 the Quinns resided in a twenty-room dwelling situated on sixteen acres of land on Woodside Avenue in the town of West Warwick. At the time of the marriage, the property was owned by Mr. Quinn's father, Patrick H. Quinn, who resided therein until his death in 1956. As the sole beneficiary of his father's estate, the husband inherited various parcels of real estate, including the Woodside Avenue property. Inherited assets also included a corporation, Phenix Mills, and other securities and personalty.

During the course of the marriage, Mr. Quinn sold several of the inherited parcels of realty. The proceeds were used to satisfy various financial obligations, including the cost of the children's education and miscellaneous household expenses. The husband would reinvest any surplus in money-market funds, stocks, and other securities. Mr. Quinn's testimony indicates that the investments that he made during the marriage involved a commingling of funds traceable to inherited assets with monies derived from other sources.

In 1977 the husband sold the Woodside Avenue property. The proceeds from the sale were placed in a certificate of deposit bearing the names of both parties. A smaller marital residence, located on Doyle Avenue in the city of Providence, was ultimately purchased with a portion of the funds. Title to the property was acquired by the parties as joint tenants.[1]

During the early years of their marriage, prior to the birth of the parties' first child, Mrs. Quinn was employed, part-time, in her husband's law office. Throughout the marriage, she also served as treasurer of Phenix Mills. In this capacity Mrs. Quinn maintained the corporation's books and records. In exchange for such services she received compensation in the amount of $100 per month. Upon the parties' separation in 1981, Mrs. Quinn was relieved of her duties as treasurer of Phenix Mills. Thereafter, the wife's sole source of income was her part-time employment in a hospital gift shop. Her earnings from this employment total approximately $80 per week.

By interlocutory decree entered on October 19, 1983, the Family Court granted both parties' petitions for absolute divorce on the grounds of irreconcilable differences. The trial justice found the husband's alcoholism to be the basis for the deterioration of the marital relationship. At trial Mrs. Quinn testified that Mr. Quinn began consuming excessive amounts of intoxicating beverages shortly before the birth of their first child and that such behavior continued throughout the marriage.

---

1. In his decision, the trial justice stated that the property was held in joint tenancy. However, Mrs. Quinn testified that the property was held in a tenancy by the entirety. We find such a discrepancy irrelevant to our determination of the issues before us.

On several occasions, the husband's alcoholism necessitated his hospitalization. The court found that the wife was not responsible for the breakdown of the marital relationship. Further, the trial justice credited her with being primarily responsible for the preservation of assets acquired during the marriage.

In addressing the economic issues presented, the court, after determining that the Doyle Avenue property was part of the marital estate, awarded all right, title, and interest therein to the wife.[2] The court found that the funds used to purchase the Doyle Avenue residence, although derived from the sale of the husband's inherited Woodside Avenue realty, had lost their character as inherited property. Specifically, the trial justice viewed the husband's placement of the proceeds from the sale of the Woodside Avenue property in a certificate of deposit bearing the names of both parties and the subsequent acquisition of the Doyle Avenue domicile in joint tenancy as indicative of an intent to confer the right of joint, equal ownership upon the wife.

Further, the court assigned to the wife all furnishings contained in the marital domicile. Although many of the furnishings had been acquired by the husband through inheritance, the court found that as a result of the placement and continuous use of such items in the marital domicile during nearly thirty years of marriage, they had lost their character as inherited property and had become part of the marital estate. However, the court found that other inherited furnishings, which the husband had placed in storage, had retained their inherited nature and therefore were not assignable as marital property.

The court determined that with the exception of certain shares of stock which were directly traceable to inherited investments, all securities held by Mr. Quinn were the result of commingling of inherited and noninherited assets and therefore were part of the marital estate. Accordingly,

the trial justice ordered the husband to transfer to the wife one-half, or the cash equivalent thereof, of such securities.

The trial justice also concluded that the wife was entitled to retain ownership of three pieces of jewelry which, although initially acquired by the husband through inheritance, had remained in her possession throughout the course of the marriage.

In awarding alimony, the trial justice noted that, as a result of his earlier sale of Phenix Mills, the husband would receive installment payments of $3,506.70 per month over the succeeding forty-eight months. The court ordered the husband to pay to the wife, as alimony, one-half of each of such monthly payments. Thereafter, alimony would cease.

On appeal the husband challenges the trial court's determination that certain inherited property and assets traceable thereto had become part of the marital estate and were thus subject to distribution. Such an argument presents us with two issues. First, we must address whether such assets may, under any set of circumstances, lose their inherited nature and become part of the marital estate. If so, we must determine whether, under the facts presented, the trial court's determination was erroneous. For the reasons set forth below, we answer the first question propounded in the affirmative and respond negatively to the second.

Our equitable-distribution statute, G.L. 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L.1982, ch. 403, § 1, provides in pertinent part as follows:

"Assignment of property.—In addition to or in lieu of an order to pay alimony made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be so assigned, the court after hearing the witnesses, if any, of each party, shall consid-

2. However, the court found that all other realty held by the husband, having been acquired by inheritance, was not part of the marital estate and therefore not subject to distribution.

er the length of the marriage, the conduct of the parties during the marriage, and the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates, and the contribution and services of either party as a homemaker. The court may not assign property or an interest therein held in the name of one of the parties if said property was held by said party prior to the marriage, but may assign income which has been derived therefrom during the term of the marriage. The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during or after, the term of the marriage."

Equitable distribution is a three-step process. First, the trial justice must determine which of the parties' assets are marital property and which are nonmarital property. Second, the trial justice must consider the factors enumerated in § 15–5–16.1. Third, he or she must distribute the marital property. *Lancellotti v. Lancellotti*, 481 A.2d 7, 10 (R.I.1984).

In conducting the first phase of this three-part analysis, the trial justice found that the marital domicile, although undisputably purchased with proceeds from the sale of the husband's inherited Woodside Avenue property, was part of the marital estate. In challenging this determination, the husband contends that neither the initial placement of the sale proceeds in a certificate of deposit held by the parties in joint tenancy nor the parties' subsequent joint acquisition of the Doyle Avenue property was indicative of any intent to grant the wife an interest in the property. We disagree.

■ When, during the course of a marriage, title to property for which one spouse has paid the purchase price is acquired in the names of both spouses, the transaction is presumed to be a gift or advancement for the benefit of the other spouse. *Matracia v. Matracia*, 119 R.I. 431, 435–36, 378 A.2d 1388, 1390 (1977). In

addressing issues similar to those presently before us, courts in other jurisdictions have viewed the placement of one spouse's nonmarital assets or property traceable thereto in the names of both spouses as joint tenants or tenants by the entirety as bringing such assets into the marital estate. *See, e.g., Atkinson v. Atkinson*, 87 Ill.2d 174, 57 Ill.Dec. 567, 429 N.E.2d 465 (1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); *Carter v. Carter*, 419 A.2d 1018 (Me.1980); *Ayars v. Ayars*, 50 Md.App. 93, 436 A.2d 490 (1981); *Madden v. Madden*, 336 Pa.Super. 552, 486 A.2d 401 (1984); *Bonnell v. Bonnell*, 117 Wis.2d 241, 344 N.W.2d 123 (1984). In so doing, courts have relied on the doctrine of transmutation. The doctrine, which represents an application of the presumption-of-gift principle discussed in *Matracia, supra*, refers to a change in character of property from separate to marital by an exercise of an actual intention objectively manifested. *Carter*, 419 A.2d at 1022. A transfer of nonmarital assets from one spouse to both spouses jointly, in the absence of clear and convincing evidence to the contrary, will be understood as evincing an intention to transfer the property to the marital estate. *Id.* We believe that the doctrine of transmutation is consistent with the recognition, afforded by § 15–5–16.1, of marriage as a partnership. *See Lancellotti*, 481 A.2d at 9; *Wordell v. Wordell*, 470 A.2d 665, 667 (R.I.1984).

■ Applying the transmutation theory to the matter before us, we conclude that the trial justice correctly classified the Doyle Avenue domicile as marital property. Despite the husband's assertions to the contrary, we do not believe that the record evinces an intention that the realty, which was purchased with a portion of the proceeds from the sale of his inherited property, remain within his separate, nonmarital estate.

The proceeds from the sale of the husband's inherited Woodside Avenue property were first placed in a jointly held certificate of deposit. The record reveals that the

parties initially disagreed over how the certificate should be titled. The wife sought joint ownership while the husband expressed a desire to retain the funds as his separate property. Ultimately, however, Mr. Quinn placed the funds in a joint account. Such action evinces his apparent consent to Mrs. Quinn's demand for an ownership interest in the funds. The record is devoid of any suggestion that the parties agreed or understood that the husband would retain sole ownership of the funds despite such placement. As the trial justice correctly held, the fact that the husband retained physical possession of the certificate is not determinative.

█ Further, when a portion of the funds was subsequently used to purchase the Doyle Avenue parcel, title to the realty was acquired by the parties as joint tenants. Such an act is consistent with, and indicative of, an intent that the parcel become part of the marital estate.

█ The presumption that the husband, by placing the property in joint tenancy, intended the wife to acquire an interest therein is particularly viable in view of the length of the parties' marriage and the assistance rendered by Mrs. Quinn throughout the course of the marital relationship. Acceptance of the husband's bare assertion that he lacked any donative intent and that he placed the property in joint ownership only for the purpose of convenience would lead to an inequitable result. It would permit a spouse owning what was initially nonmarital property, after exchanging and placing such property in joint names and after many years of marriage, to defeat the right of the other spouse in such assets. *Carter*, 419 A.2d at 1021 (citing *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo.Ct.App.1975)).

█ Finally, to accept the husband's interpretation of § 15–5–16.1, which he views as operating to forever preclude inclusion within the marital estate of any assets traceable to inherited property, would be contrary to clear legislative intent. The

purpose of § 15–5–16.1 is to effect a just and fair distribution of marital assets between the parties. *Wordell*, 470 A.2d at 667. To adopt the theory espoused by the husband would, in cases such as the one before us, require the court to ignore the parties' recognition of their marital partnership and their intentional creation of a joint tenancy. The noninheriting spouse, by being deprived of his or her rights as a joint tenant, would be left in a less equitable position than he or she would have been prior to the statute's enactment. *Carter*, 419 A.2d at 1022–23.

█ The husband also challenges the trial court's classification of certain securities contained in his investment portfolio as marital property. He argues that inherited assets served as the source of funds for such investments and that therefore the securities are not part of the marital estate. However, the trial justice determined that the securities were acquired through a commingling of inherited and noninherited assets. Such a finding is supported by Mr. Quinn's own testimony, which indicates that his investment funds represented a combination of proceeds from the sale of various parcels of inherited realty and noninherited monies, presumably derived from his engagement in the practice of law. When marital and nonmarital assets are commingled and then exchanged for other property, the newly acquired asset is marital property. *Anderson v. Anderson*, 584 S.W.2d 613 (Mo.Ct.App.1979). Therefore, the trial justice correctly classified the securities as part of the marital estate.

█ In challenging the trial court's characterization of all of the furnishings contained within the marital domicile as marital property, the husband relies on the uncontroverted evidence that he inherited many of the furnishings from his father. However, in view of the continuous, daily access to, and use of, such items by both parties throughout nearly thirty years of marriage, we believe that the trial justice correctly concluded that the furnishings

had lost their character as inherited property.

In asserting that he did not intend to grant the wife an interest in the items, the husband refers us to his testimony that upon his father's death in 1956 the disputed furnishings were simply left in place in the Woodside Avenue domicile. He contends that such inaction should not be viewed as indicative of an intent to assimilate the property into the marital estate. We find such an argument to be unpersuasive, particularly in light of the fact that upon acquisition of a new marital domicile, the Doyle Avenue realty, the disputed items were placed and utilized therein.

■ The husband also contends that the trial justice erred in finding the wife had acquired, by gift, three pieces of jewelry which Mr. Quinn had inherited from his father. However, the record reveals that throughout the course of the marriage, the jewelry remained in the wife's possession with the husband's full knowledge and consent. Considered in view of the services and assistance provided by the wife during the marriage, such evidence was reasonably determined by the court to be indicative of a donative intent.

In addition to concluding that the trial justice did not commit error in classifying certain inherited property and assets traceable thereto as marital property, we find that the court's division of the marital estate did not constitute an abuse of discretion. Our review of the record reveals that the trial justice applied the guidelines set forth in § 15–5–16.1 to, and engaged in a thoughtful examination of, the evidence before him.

■ The husband also challenges the court's award of alimony. The trial justice ordered Mr. Quinn to pay to the wife, as alimony, one-half of each of the remaining forty-eight monthly installment payments he was to receive as a result of his earlier sale of Phenix Mills. It is undisputed that, as inherited property, neither the husband's interest in the corporation nor the proceeds from the sale thereof were part of the marital estate. The husband contends that the alimony award is merely a thinly veiled attempt to effect an improper assignment of nonmarital assets. We disagree.

Our examination of the record reveals that the court's award of alimony was based on a careful consideration of the factors set forth in § 15–5–16. Such criteria include assessment of the ability of the party from whom alimony is sought to meet such an obligation. *Whited v. Whited*, 478 A.2d 567, 570 (R.I.1984). The trial justice properly considered the installment payments as income available to the husband from which he could pay support.

Finally, the husband challenges the trial justice's award of counsel fees to the wife. Pursuant to § 15–5–16, the Family Court has the authority to order one spouse to pay the counsel fees of the other spouse. However, prior to making such an award, the trial justice must determine that the party from whom payment is sought has sufficient financial ability to pay such fees and that the spouse seeking payment is without property available for that purpose. *Casey v. Casey*, 494 A.2d 80, 84 (R.I.1985) (citing *Tarro v. Tarro*, 485 A.2d 558, 564 (R.I.1984)).

On appeal, the husband contends that in view of the court's assignment of the marital domicile to the wife, an award of counsel fees was unwarranted. As support for his argument, the husband relies on our decision in *Casey, supra*, in which we found that a spouse who had been awarded sole ownership of the marital domicile possessed sufficient means by which to pay her own counsel fees.

■ However, we do not view our holding in *Casey* as mandating denial of an award of counsel fees whenever the party requesting such payment has been awarded exclusive title to the marital domicile. Rather, a distribution of marital assets will affect the recipient's eligibility for a counsel-fees award only when a portion of the assets acquired is in fact available to pay

such expenses. From the evidence presented, and particularly in view of the wife's limited earning capacity, the trial justice could reasonably conclude that the property assigned would be required to generate income sufficient to meet the wife's future living expenses and, therefore, that such assets were unavailable for the payment of her counsel fees.

For the reasons stated, the husband's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in the case are remanded to the Family Court.

WEISBERGER, J., did not participate.