Angela S. HURLEY

v.

Peter H. HURLEY

v.

Ilse VON SECKENDORFF, Intervenor.

No. 91–49–Appeal.

Supreme Court of Rhode Island.

May 15, 1992.

Howard Lipsey, Lipsey & Skolnok, Providence, for plaintiff.

Richard Galli, Providence, for intervenor.

Francis J. Murray, Jr., Pawtucket, for defendant.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendant's appeal from a final judgment rendered by the Family Court. We affirm.

The plaintiff, Angela S. Hurley (wife), and defendant, Peter H. Hurley (husband), were married in Boston, Massachusetts, on May 10, 1968. Later, a second ceremony was conducted in the wife's native land of West Germany for the benefit of her family who live in that country. Following their marriage they lived in Rhode Island. Three sons were born of the marriage.

In May of 1987 the wife filed a complaint for divorce. The husband filed an answer and a counterclaim. Ilse Von Seckendorff, the wife's mother, a German citizen, intervened pursuant to Rule 24(a)(3) of the Rules of Procedure for Domestic Relations to recover funds that her daughter and son-in-law withdrew from an account she had with E.F. Hutton. The husband brought a counterclaim against his mother-in-law that alleged that her property on Williams Street in Providence, Rhode Island, had become part of the marital estate or, in the alternative, pursuant to the doctrine of quantum meruit that he was entitled to compensation for property-management services rendered. The matter was tried before the Family Court in May and June of 1990. An appeal was timely filed.

The trial court entered a final judgment on December 10, 1990, that specifically incorporated decisions rendered on June 21, 1990, and October 16, 1990. The husband's appeal from the final judgment raises six issues.

I

The husband first argues that the trial court overlooked material evidence when it denied his Rule 41(b)(2) motion to dismiss and ruled in favor of the mother-in-law on her claim for reimbursement for moneys withdrawn from the E.F. Hutton account.

The evidence presented at trial showed that in 1981 the mother-in-law established an E.F. Hutton account with $30,000 of her own money to cover the cost of repairs on the Williams Street house. The account listed the mother-in-law and her daughter as joint tenants with right of survivorship. The daughter understood that the money in the account could also be used by her and her husband as a line of credit if they needed money. The husband and wife had an understanding that they would repay any amounts withdrawn from the account. The husband admitted that he and his wife withdrew money from this account for their family and his business expenses. He repeatedly made deposits involving thousands of dollars to replace money withdrawn from the account. The husband also knew that his mother-in-law had established the account and could withdraw all the funds at any time, but he denied having any agreement with the mother-in-law to replace funds he withdrew. In 1987 the E.F. Hutton account was closed because all the funds had been withdrawn.

The trial court denied the husband's motion to dismiss. It found that there was sufficient evidence to show that an obligation of repayment existed in spite of the lack of any written or oral agreement between him and his mother-in-law. The court concluded that $22,109.65 had been withdrawn from the account by the husband and the daughter, and it ordered them to repay the mother-in-law that sum in equal shares.

When the trial justice considers a Rule 41(b)(2) motion, the judge assesses the credibility of the witnesses as well as the weight of the evidence. *Samuel Nardone & Co. v. Bianchi*, 524 A.2d 1114, 1116 (R.I.1987). The trial justice's findings will not be disturbed by this court unless he or

she overlooked or misconceived material evidence. *Id.* After a review of the evidence we conclude that the trial court did not overlook or misconceive material evidence in reaching its conclusion that an obligation of repayment was established between the husband and his mother-in-law by the history of withdrawals and deposits he made over a six-year period.

## II

The husband next argues that the trial court overlooked material evidence when it denied his counterclaim against his mother-in-law. He contends that title to the Williams Street property was part of the marital assets because he believed that his mother-in-law intended in the future to transfer title to the property to him and his wife. In the alternative, he alleges that the trial court overlooked material evidence when it denied his claim for fees under the theory of quantum meruit.

In 1979 the mother-in-law, who still lives in Germany, purchased a three-family residence located at Williams Street in Providence, Rhode Island. The husband arranged the acquisition, including the obtaining of a mortgage. He also oversaw the renovations and repairs and served as the property manager from 1979 through 1987. The husband had no oral or written agreement with his mother-in-law concerning either the conveyance of the house at some time in the future or monetary compensation due to him for management services rendered. He testified that he did not charge his mother-in-law for the management services he rendered because his wife told him that she would some day inherit the home from her mother. He presented an expert on property management who testified that the value of the management services provided for eight years was $51,864. The wife testified that at the time that the Williams Street property was purchased, she discussed with her husband an offer by her mother to pay him for managing the property, but he said he did not want anything for managing the property.

The husband's counterclaim was denied because the trial court found no evidence of an intent to transfer the property. His claim for payment was also denied because the trial court concluded that his services were intended to be gratuitous at the time they were rendered.

The findings of fact by a trial court will not be disturbed on review unless it overlooked or misconceived material evidence or was otherwise clearly wrong. *Stanzler v. Stanzler*, 560 A.2d 342, 345 (R.I.1989); *Sattari v. Sattari*, 503 A.2d 125, 127 (R.I. 1986).

There is no evidence in the record of an agreement concerning a transfer of the property. The husband's own admissions plus his wife's testimony provided the trial court with sufficient facts to conclude that the husband intended his services to be gratuitous. Particularly notable is the fact that the husband did not seek payment for his services until his mother-in-law sought to intervene to recover funds withdrawn from her E.F. Hutton account.

## III

The husband also asserts that the trial court misconceived or overlooked material evidence when it determined that the Elmgrove Avenue property had no equity value and should not be considered in the assignment of property.

In 1988 the wife purchased that property for the sum of $180,000. To purchase the property she obtained a $200,000 loan from her brother who lives in Germany. She executed a promissory note and recorded a mortgage in favor of her brother. She paid an additional $77,000 to $80,000 for improvements to the property. Her testimony on this point is corroborated by a mortgage deed she recorded in favor of her brother on July 25, 1988, and by a promissory note she executed in favor of her brother on July 15, 1988. Although the husband argued that the mortgage was merely a sham intended to conceal a gift of $200,000, the trial court properly concluded that the mortgage was executed in good faith and was valid. The property had no equity value and should not have been considered in the assignment of property.

## IV

The husband's contention that the trial court erred when it found that the Clarke Road property in Barrington was not a marital asset is based upon several arguments.

In April of 1974 the wife purchased a home on Clarke Road in Barrington, Rhode Island, for the sum of $125,000. The property was held in her name. In July of 1987 she sold the house for $600,000. After paying off a $200,000 mortgage, the remaining $400,000 was placed in an escrow account until the question of whether the money was a marital asset was resolved.

At trial she claimed that the property was purchased with money she received pursuant to German inheritance laws and that the entire $400,000 was solely her money. Over the husband's objection the trial court permitted the transcript of prior testimony by an expert on German inheritance law who testified in a prior trial of this case to be read into the record. The expert testified about the German Civil Code as it pertains to inheritance, "forced share," [1] and waiver of a forced share. He also translated from German to English a document entitled "Transfer Agreement with Waiver of Forced Share" that the wife had executed.

The wife testified that pursuant to German inheritance law she was entitled to a "forced share" in her mother's property. As permitted under German inheritance law, she waived her right to a "forced share" against her mother's estate in exchange for an interest in realty owned by her mother. The wife then executed a power of attorney that permitted her mother to sell that property for her. She testified that after the property was sold, her mother issued to her four separate checks totaling $161,969.26. The wife stated that $125,000 of her inheritance was used to purchase the house in Barrington.

The husband argued that the $161,969.26 received by his wife was a marital asset because the money was a gift and gifts were considered part of the marital estate at the time this action was brought. As a result, the $400,000 generated by the sale was a marital asset. He also argued in the alternative that under the doctrine of transmutation the appreciated value of the house was a marital asset.

Over the husband's argument that the $161,969.26 was a gift to his wife that would have been a marital asset under our law at the time, the trial court found that the money was an inheritance under German law. It correctly found that since the house on Clarke Road was purchased with inheritance money and held solely by the wife, it was not a marital asset and that transmutation had not occurred.

### A

First, the husband contends that the trial court erred when it permitted the transcript of the expert's testimony from an earlier trial of this case to be read into the record. He argues that the expert was not unavailable within the definition of Rule 804 of the Rhode Island Rules of Evidence. Additionally, the expert's testimony was not relevant, according to the husband, because the inheritance law of Germany is not relevant in this proceeding. He also argues that the expert was not duly qualified.

■ Rule 804(a)(5) defines an unavailable witness as a declarant who is "absent from the hearing and the proponent of his or her statement has been unable to procure the declarant's attendance by process or other reasonable means." The expert was a Massachusetts resident. By a letter dated March 6, 1990, the expert notified the wife that he was unwilling to testify during the retrial because he no longer practiced law. Inasmuch as the expert was beyond the trial court's subpoena power and unwilling to testify, the trial court correctly ruled that he was an unavailable witness.

1. Under German inheritance law, if a testator dies leaving a will that excludes a certain class of relative, including children and spouses, that class is entitled to a certain share of the estate that is referred to as a "forced share."

The husband's argument, that the expert's testimony was not relevant because the inheritance law of Germany is not relevant in the proceeding, is entirely without merit. Finally, the determination of admissibility of an expert witness is within the sound discretion of the trial court and will not be disturbed by this court unless there is an abuse of that discretion. *State v. Capalbo*, 433 A.2d 242, 246–47 (R.I.1981). Here we do not find an abuse of discretion.

## B

The husband next argues that the trial court erred when it allowed into evidence documents transmitted by facsimile machine from Germany. The documents were offered by the wife after having rested. The husband objected because they were not authenticated, they were barred by the "best evidence" rule, and they were inadmissible hearsay. The documents in question are facsimile copies of the power of attorney executed by the wife that provided her mother with the power to sell the realty she received in exchange for waiving her "forced share" interest and the realty sales agreement that her mother entered into on her behalf.

The admission of evidence is within the sound discretion of the trial court. The trial court did not abuse its discretion when it permitted the wife to reopen her case in chief to introduce the two documents. They had been referred to in her trial testimony. During the trial the husband's counsel cross-examined her about them. Therefore, the husband has not suffered any harm because of their admission.

The "best evidence" rule does not apply because the contents of the documents were not in dispute. The issue before the trial court was whether the wife received an inheritance. We need not address the husband's hearsay argument because it is an established rule of law in Rhode Island that this court will not consider an issue raised for the first time on appeal when the issue was not properly presented before the trial court. *Bouchard v. Clark*, 581 A.2d 715, 716 (R.I.1990).

## C

The husband contends that the trial court misconceived the evidence when it found that the $161,969.26 his wife received in four separate payments from her mother was an inheritance. He alleges that the evidence showed that the money was a gift and gifts were marital assets prior to 1988 when G.L. 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L. 1986, ch. 484, § 1 was amended to exclude gifts from the marital assets. Alternatively he argues that the trial court erred when it ruled that the Clarke Road property had not become a marital asset under the doctrine of transmutation. *See Quinn v. Quinn*, 512 A.2d 848 (R.I.1986).

Equitable distribution involves a three step process. *Quinn v. Quinn*, 512 A.2d at 852; *Lancellotti v. Lancellotti*, 481 A.2d 7, 10 (R.I.1984). First, the trial court must separate the non-marital assets from the marital assets using the guidelines set forth in § 15–5–16.1. Next, the trial court must consider the factors enumerated in § 15–5–16.1. Finally, the marital assets must be distributed. *Quinn*, 512 A.2d at 852.

At the time this action was brought the portion of § 15–5–16.1 that set forth guidelines for separating nonmarital assets from marital assets read as follows:

"The court may not assign property or an interest therein held in the name of one of the parties if said property was held by said party prior to the marriage, but may assign income which has been derived therefrom during the term of the marriage and the court may assign the appreciation of value from the date of the marriage of property or an interest therein which was held in the name of one party prior to the marriage which increased in value as a result of the contribution of either spouse during the marriage. The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during or after, the term of the marriage."

The wife's testimony about the money's being an inheritance under German law was substantiated by the Transfer Agreement with Waiver of Forced Share (in its English translation), the power of attorney she executed, a sale agreement, the expert's testimony about the German Civil Code, and an English translation of the German Civil Code. In light of the above evidence it does not appear that the trial court misconceived material evidence when it concluded that the payment orders of June 1, 1973, June 13, 1973, November 26, 1973, and April 2, 1974, totaling $161,969.26 were an inheritance pursuant to German law.

There is no merit in the husband's transmutation argument. In *Quinn* we stated that a "transfer of nonmarital assets from one spouse to both spouses jointly, in the absence of clear and convincing evidence to the contrary, will be understood as evincing an intention to transfer the property to the marital estate." *Quinn*, 512 A.2d at 852. Here, the Clarke Road property was purchased and held only by the wife. Therefore, *Quinn* has no application in the present case.

#### D

■ Lastly, he argues that the trial court erred when it failed to include the appreciation of the Clarke Road property in the marital estate.

At the time this action was brought the portion of § 15–5–16.1 that refers to inherited property read as follows: "The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during or after, the term of the marriage." In *Lancellotti* we stated that we would not "ascribe an intent that does not appear on the face of the statute. We give statutory terms their plain and ordinary meaning un-

less a contrary intent is clearly shown on the face of the statute." 481 A.2d at 10.

The sentence within § 15–5–16.1 that provides the trial court with the discretionary power to assign income and appreciation of value expressly applies only to property or an interest therein that was held in the name of one party prior to and during the term of the marriage.[2] The Legislature had not set forth any language in § 15–5–16.1 that provides the trial court with the discretionary power to assign either income or appreciation of value from inherited property.

#### V

■ The husband next challenges the award of joint custody and the exclusive right to decide the educational needs of the minor children to the wife while he is required to pay for one half of the tuition costs.

There were two minor children at the time of trial. The youngest son had attended private schools since the start of his formal education. The middle son has attended both private and public schools and was attending a private school at the time of trial. At trial the husband argued that the minor children should be sent to public schools because the expense was unduly burdensome and because the children do not need private school education because of a physical or emotional need. The wife testified that the children's educational background had been principally private and that she wished to keep them in private schools.

Prior to and during the marriage the husband was a self-employed real estate broker with Peter H. Hurley Real Estate. Because of the depressed real estate market his earnings declined from approximately $99,000 in 1985 to approximately $68,000 in 1986 and then to approximately

---

**2.** General Laws 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L.1986, ch. 484, § 1 provides in part:

"The court may not assign property or an interest therein held in the name of one of the parties if said property was held by said party prior to the marriage, but may assign income which has been derived therefrom during the

term of the marriage and the court may assign the appreciation of value from the date of the marriage of property or an interest therein which was held in the name of one party prior to the marriage which increased in value as a result of the contribution of either spouse during the marriage."

$60,000 in 1987. The wife was employed by KB Design as a jewelry designer. Her earnings were approximately $26,000 per year. The trial court took judicial notice of the effect that the depressed real estate market had on the husband's yearly earnings. It concluded that in spite of the decline in income he was still able to earn $50,000 per year. Based upon this yearly income figure the court directed the husband to pay $842.16 per month in child support and one half of the private school tuition expenses.

In light of the fact that both parents were educated in private schools, that one minor son had attended only private schools, that the other minor son had attended private schools throughout most of his education, and that both sons were attending private schools at the time of the trial, we do not believe that the trial court has misconceived the relevant evidence or was otherwise clearly wrong. The husband's own testimony about his vacation trips to Guadeloupe, St. Barts, and Martinique and skiing trips in Utah on which he spent a substantial amount of money undermines his claim that the trial court erred when it determined that he was able to pay half the tuition costs.

## VI

Finally, the husband contends (1) that the trial court misconceived or overlooked material evidence in regard to the issue of the capital gains tax on the sale of the Clarke Road property and (2) that the trial court erred when it ordered him to file an amended tax return and in ignoring the importance of the capital gains tax on other properties.

Prior to a hearing on the merits husband and wife entered into a stipulation concerning the Clarke Road property which was done for tax purposes relating to potential capital gains taxes. The trial justice found that the Clarke Road property was the sole property of the wife and that the $400,000 net profit generated by its sale was also her sole property. She was ordered to be responsible for any and all capital gains taxes resulting from the sale of the property. The trial justice also ordered that if the husband had paid any taxes, he was to file an amended return and reimburse the wife any money taken from the escrow account to pay the taxes. The escrow account was established with the proceeds from the sale of the Clarke Road property pending the trial justice's ruling on the question of whether the money was a marital asset.

The trial court's findings on this issue, in our opinion, are based on credible evidence. *See Stanzler*, 560 A.2d at 345. They will not be disturbed.

For all these reasons the husband's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Family Court.

FAY, C.J., did not participate.