Virginia GERVAIS

v.

Donald GERVAIS.

No. 94–524–Appeal.

Supreme Court of Rhode Island.

Feb. 18, 1997.

---

Robert S. Parker, Deborah Miller Tate, Providence, for Plaintiff.

Gerald C. DeMaria, Providence, for Defendant.

OPINION

BOURCIER, Justice.

In this matter, the defendant, Donald Gervais (Donald), appeals from final judgment entered in the Family Court divorcing the parties and providing for distribution of the marital estate. The question presented in this appeal is whether the Family Court justice, in ordering a distribution of marital assets and awarding child support, erred. Because we conclude error was committed in valuing the marital estate, we reverse in part and affirm in part.

The facts before the Family Court disclose that Donald and Virginia Gervais (Virginia) were married in 1965 in West Virginia and that during their marriage they had six children. Donald, who had received a Bachelor of Science degree from the University of Rhode Island, worked outside the home in family business ventures. Virginia held an Associate of Arts degree but did not work outside the home.

Over the years the marital relationship began to disintegrate. The evidence presented by the parties suggested that Donald grew hostile toward Virginia and that once separated from her, he began seeing another woman. Donald alleged that Virginia had distanced herself from the relationship because of her increasing involvement in her religious beliefs.

In 1988 Virginia filed a petition for divorce in the Family Court, alleging that there were irreconcilable differences leading to the irremediable breakdown of the marriage. She sought equitable distribution of the marital estate, custody of three children who at the time were still minors, and such other relief as the Family Court found appropriate. Donald answered that a divorce and distribution of the marital estate were appropriate due to the breakdown of the marriage but counterclaimed by requesting joint custody of the minor children and contending that Virginia was not entitled to any other relief.

After a lengthy period of discovery and numerous pretrial motions, the case was finally reached for trial in the Family Court in 1992. The trial justice after trial reviewed the evidence presented in the case and grant-

ed the petition for divorce, finding the parties equally responsible for the breakup of the marriage. He awarded joint custody of the children to the parties but gave Virginia possession of the minor children subject to Donald's reasonable rights of visitation. The trial justice then ordered a distribution of the marital assets with 50 percent going to Donald and 50 percent going to Virginia. He refused to award Virginia alimony, but ordered Donald to pay $20,000 per year for child support. Donald's claims of error focus on the distribution of marital assets and the award of child support.

## I

In his appeal Donald claims that in distributing the marital estate under G.L.1956 § 15–5–16.1, the Family Court trial justice erred, his errors being sufficient to warrant reversal. First, he contends that the justice improperly found that certain personal assets were marital in nature and thus erroneously distributed them. Next, he contends that the trial justice failed to consider all of the statutory factors required under § 15–5–16.1. Finally, he claims that the trial justice erred in choosing to value the marital estate on the basis of his assets as of 1990 rather than on his assets as of the time of the 1992 trial. We address each contention in turn.

## A

Donald's first claim of error is that the judge improperly included certain personal property as part of the marital estate and that such personal property was thus erroneously distributed to Virginia. In this case the trial justice determined that the following were marital assets and subject to equitable distribution under § 15–5–16.1:(1) Tucker Anthony account ($1,654,532), (2) Shearson Lehman account ($4,671), (3) A.G. Edwards & Son account ($183,417), (4) one hundred shares Crawford Precision Product, Inc. ($300,000), (5) Additional stocks of Crawford Precision Product, Inc. (1,000 British pounds), (6) One-third ownership of MDF Maschinen GMBH Ballou ($20,000), (7) IRA Schwab account ($18,174), (8) IRA at Citizens Bank ($31,582), (9) IRA LSSB ($3,985), (10) Citizens checking account ($5,000), (11) Lake Sunapee Bank savings account ($1,300), (12) Citizen's Bank savings account ($7,748), (13) Citizen's Bank savings account ($21,359), (14) Marital domicile ($415,000 with $96,000 mortgage), (15) New Hampshire real estate ($385,000 with $342,000 mortgage), and (16) Commercial real estate ($0 value).

We have previously stated that a trial justice in undertaking to distribute marital assets must initially separate nonmarital assets from the marital assets in accordance with § 15–5–16.1. *Hurley v. Hurley*, 610 A.2d 80, 85 (R.I.1992); *Quinn v. Quinn*, 512 A.2d 848, 852 (R.I.1986). Donald asserts that the Family Court justice, in performing this first step, failed to exclude from distribution any "property or an interest therein which has been transferred to one of the parties by gift from a third party before, during, or after the term of the marriage." Section 15–5–16.1(b). Donald's contention is that most of the distributed assets were derived from the sale of a company that he had acquired by virtue of two separate gifts of stock. He asserts that because most of the assets emanated from those gifts of stock, they were not subject to equitable distribution.

According to Donald, the first gift was made to him in 1971 when his father created a closely held corporation called Gervais Electronics Corporation (GEC). When GEC was incorporated, the first 600 shares authorized and issued were divided among Donald, Donald's mother, and Donald's father. Donald contends that he never paid for the 200 shares transferred to him. Rather, he asserts, the stock was given to him as a gift and paid for by his mother and father.

Donald claims that in 1980 he exchanged his 200 shares of GEC stock for 1,900 shares of stock in W.H. Edwards Corporation (WHEC), a company wholly owned by his father. He asserts that in that same year, while working at WHEC, his father gave him a second gift of 1,790 shares of WHEC. That last gift Donald claims brought his total interest in WHEC to 3,690 shares of stock. Donald contends that this last transfer was made to appear like a sale in order to avoid federal gift and estate taxes but that it was in reality a gift in disguise.

**1306**

W.H. Edwards Corporation later merged with GEC, which was left as the surviving company and was renamed Gervais Corporation (GC). A stock freeze was then accomplished whereby Donald was left with 80 percent of the common stock of GC. The Gervais Corporation was then sold in 1981 to Leesona Corporation, a corporation owned by third parties, for $4 million.

According to Donald, his eighty percent ownership in GC resulted solely from the gifts made in 1971 and 1980 and that, therefore, any money derived from the sale of GC remained gift property not subject to equitable distribution under § 15–5–16.1.

After reviewing the record and the trial justice's decision, we believe that the trial justice correctly found that any portion of funds received by Donald from the proceeds of the sale of GC to Leesona was marital property and subject to distribution. With respect to the transfer of 1,790 shares of WHEC stock to Donald in 1980 the trial justice concluded that this transaction was a sale rather than a gift. In his decision he pointed to several persuasive facts to support that conclusion. First, the transfer was effected by Donald's execution of an interest-bearing promissory note for $166,500. Thus the transfer at its inception had all indicia of a sale. In addition, rather than having transferred the stock for a bargain price to Donald as would be expected with any kind of gift, the 1,790 shares were carefully valued by accountants in order to determine their exact market value. Furthermore, as the trial justice below noted, the interest paid on the promissory note was reported by Donald on his income tax returns, and no gift-tax returns were ever filed. With respect to these last facts, the trial justice was particularly reluctant to treat the stock-transfer transaction as a sale for taxation purposes and then later as a gift because the parties were involved in the divorce proceeding.

Donald contends that the trial justice should not have been influenced by the absence of tax returns in finding a sale rather than gift. Donald points to our opinion in *Chase v. Blackstone Distributing Co.*, 110 R.I. 537, 294 A.2d 392 (1972), in support of his contention. Our opinion in *Chase*, however, stated that the existence of gift-tax returns "is not conclusive evidence that a gift has been made." *Id.* at 547, 294 A.2d at 397. We read this statement simply to mean that gift-tax returns should be considered but are not to be treated as a final litmus test. In this case the Family Court trial justice did not base his determination solely upon the absence of gift-tax returns, and thus his evaluation of the transaction was proper.

We understand clearly the trial justice's reluctance to permit Donald to treat and consider his shares of stock in one manner in order to elude the tax collector and in an opposite manner in order to deprive Virginia. We discern no error in his finding that the sale proceeds from those shares of stock were part of the marital property.

Donald further asserts that the trial court justice failed to properly consider the testimony of Norman Gessman (Gessman), a certified public accountant for the Gervais family, when he considered whether the transfer was a gift. After reviewing Gessman's testimony, we are not persuaded that the trial justice overlooked or misconceived that evidence. At one point during the trial when asked whether the transfer was a gift or a sale, Gessman replied, "[I]t was depending on who was the [IRS] agent and who was buying lunch." In his decision the trial justice pointed to that ambidextrally evasive statement, and we cannot fault the trial justice for viewing Gessman's testimony with skepticism.

Additionally, Donald urges that the trial justice did not properly examine the affidavit of Judge Ernest C. Torres, who at one time was engaged as counsel for the Gervais family, WHEC and GEC. In our review of that affidavit we are unable to find that it supports the proposition that Donald wishes it to support.[1] Neither the desire to

1. Donald points to the following portions of Judge Torres's affidavit as being pertinent:
"4. One of the purposes of the recapitalization was to implement Ernest J. Gervais' desire to minimize estate taxes by transferring a portion of the value of the business to his son, Donald, who was actively involved in the business.

avoid taxes at death expressed by Donald's father nor his desire to ensure that his children were treated equally through his will is incompatible with the trial court's determination that the 1980 transaction was a sale, and we are not persuaded that the trial justice's conclusion was clearly wrong.

■ Donald next asserts that even if the transfer of 1,790 shares was not a gift, the transfer in 1971 of 200 shares of GEC stock was a gift. The trial justice concluded from his review of the records of the minutes of the first meeting of the board of directors that this transfer constituted a sale rather than a gift because the minutes disclose that the 600 shares were purchased for $1,000. While we are unwilling to say that the trial justice was clearly wrong in making that finding we do, however, question the evidentiary basis for that finding. While the evidence does demonstrate that the stocks were purchased, the evidence is unclear whether the stocks were purchased by Donald. The instrument used to pay for the 600 shares was a check written from the joint account of Donald's mother and father. The record contains no evidence to indicate whether Donald reimbursed his parents for that expenditure.

We are not compelled to belabor this point, however, because we believe that those 200 shares of GEC stock ultimately lost their personal character through commingling. *See Quinn v. Quinn,* 512 A.2d 848 (R.I.1986). In *Quinn* we held that "[w]hen marital and nonmarital assets are commingled and then exchanged for other property, the newly acquired asset is marital property." *Id.* at 853. In that case, securities were purchased with some personal and some marital funds. The joining of the marital and the personal funds and their exchange for the newly acquired securities gave the new securities a marital character. *Id.* In the instant case Donald commingled 1,790 shares of WHEC stock that we have determined were marital assets with 1,900 shares of WHEC stock that were arguably derived from the 1971 gift of 200

shares of GEC stock. After the corporate merger of GEC and WHEC, those 3,690 shares of stock became Donald's stock in the newly formed GC and were later sold for $4 million to the Leesona Corporation in 1981. Accordingly, the blending of the separate marital and personal stock and their exchange for purchase money from the Leesona Corporation rendered the money a marital asset.

### B

■ Donald's next claim of error is that the trial justice failed to consider all of the statutory factors enumerated in § 15–5–16.1. In his decision the trial justice extensively examined the facts relating to the marriage of Donald and Virginia and the need for its dissolution. The justice also referred to the twelve factors listed in § 15–5–16.1(a) that must be considered in distributing marital property. The justice in doing so stated:

"[t]he Court has already indicated that it considers the parties equally responsible for the breakup of the marriage. The Court also in reviewing 15–5–16.1 feels that the parties equally contributed to the acquisition of the assets, to the preservation, and appreciation of their value. The Court feels that a 50/50 distribution is proper in this matter."

Donald contends that in so speaking, the trial justice considered only two factors, namely, the conduct of the parties and their respective contributions to the marital assets, but failed to consider the other ten factors.

We disagree with that general contention. Our view of the trial justice's decision indicates to us that while perhaps not expressed in the particularized detail that we would like to see, the trial justice did appreciate and in general refer to the statutory factor considerations noted in § 15–5–16.1(a) although emphasizing his reliance upon the conduct of the parties and their respective contributions to the marital assets, he did refer to their

"5. Around that time, Ernest Gervais informed me that he had asked another attorney to prepare a new will for him because he intended to leave the bulk of his testamentary estate to his two daughters in order to make up

for the value of the stock given to Donald as part of the recapitalization and because he felt that my friendship with Donald might place me in an awkward position if called upon to prepare such a will."

educational backgrounds, their employability and their ages. As long as this Court is able to review a lower court's decision and to determine therefrom that all the necessary facts and statutory factors were considered, we shall not require that court to explain its considerations in a particular or a single proscribed manner.[2]

### C

█ Donald's final contention with respect to the distribution of the marital estate involves the choice made by the trial justice to value the estate on the basis of financial figures computed in 1990 rather than the value of the estate as of 1992, the date of the trial. Donald points out that all assets were valued as of 1990 except for the marital domicile, which was valued as of 1992. The record supports Donald's contention.

The trial justice failed to explain in his decision why he elected to value the marital estate upon the basis of records that were produced two years prior to the trial. He referred to no case law or statute giving him the authority to value the marital estate prior to the date of trial and he did not make any findings of fact with respect to this issue. In *Saback v. Saback*, 593 A.2d 459 (R.I.1991), we held that a trial justice must assess the marital estate as of the time of entry of judgment. *Id.* at 461; *see also Briceno v. Briceno*, 566 A.2d 397 (R.I.1989). As in *Saback*, we do not have before us any evidence from the record that would suggest any necessity for valuing the marital estate as of a time other than the date of judgment. For this reason we reverse that part of the trial justice's decision that based the marital-estate valuation on the 1990 financial figures, and we vacate the order of distribution. We remand this case to the Family Court for

marital estate valuation in accordance with this opinion.

### II

█ Donald's additional claim of trial error is that the trial justice abused his discretion in awarding $20,000 per year for child support. Under G.L.1956 § 15-5-16.2, as amended by P.L.1987, ch. 374, § 2, "the court may order either or both parents owing a duty of support to a child to pay an amount based upon a formula and guidelines adopted by an administrative order of the family court." In this case the evidence suggested that as of June 12, 1992, Donald's monthly income was $14,553. Under the 1992 Rhode Island Child Support Guidelines adopted by the Family Court, a person with such an income and having three minor children would be required to pay $2,626 per month, or $31,512 per year. In this case the trial justice's award was obviously well within the guideline limit. We see no error in his child-support decision.

For all these reasons, the defendant's appeal is sustained in part and denied in part. The final judgment appealed from is affirmed in part and reversed in part. The papers in this case are remanded to the Family Court for further proceedings therein in accordance with our opinion.

FLANDERS, J., did not participate.

---

**2.** Rule 52 of the Rules of Procedure for Domestic Relations is identical to Rule 52 of the Superior Court Rules of Civil Procedure. In regard to the latter, we have held that "Even brief findings and conclusions are sufficient as long as they address and resolve the pertinent, controlling factual and legal issues." *J.W.A. Realty, Inc. v. City of Cranston*, 121 R.I. 374, 384, 399 A.2d 479, 484–85 (1979).