Mario OLIVIERI, Jr.,

v.

Sherrie L. OLIVIERI.

No. 99–253–Appeal.

Supreme Court of Rhode Island.

Nov. 1, 2000.

Colleen Crudele, Steven N. Ortoleva, Warwick, for Plaintiff.

John D. Lynch, Warwick, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on September 27, 2000, pursuant to an order directing both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel for Mario Olivieri, Jr. and Sherrie L. Olivieri and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

This is an appeal by the wife, Sherrie L. Olivieri (defendant), from a Family Court decision pending entry of final judgment that awarded an absolute divorce to the husband and wife on the grounds that irreconcilable differences caused the irremediable breakdown of the marriage. The defendant contends that the general magistrate committed reversible error by (1) including within the marital estate, $160,000 worth of bonds held in defendant's name, (2) awarding to defendant fifty percent of the marital estate, including the marital domicile, and failing to take into consideration all the factors set forth in G.L.1956 § 15–5–16.1, and (3) ordering the parties to maintain any insurance policies on behalf of the children until they reach age twenty-one. The defendant also argues that the magistrate was biased against her in that he prematurely judged

the case by making certain statements about its outcome and, as a result, defendant is entitled to a new trial before an impartial judge. We affirm the decision of the magistrate, but modify that portion of the decision relating to the insurance policies on behalf of the minor children.

The facts insofar as pertinent to this appeal are as follows. The parties were married on April 12, 1987. Two children were born of the marriage, John Charles in 1988 and Jacklyn Leigh in 1995. The record indicates that the parties had a tumultuous relationship, with most of their problems relating to the behavioral problems of the oldest child, John Charles, who is currently in the custody of the Department of Children, Youth and Families (DCYF). The defendant is employed by the State of Rhode Island Department of Transportation (department) as a senior accountant. She has been with the department for twenty years and earns approximately $35,000 per year.

The husband, Mario Olivieri, Jr. (plaintiff), had a sporadic work history and changed jobs frequently, which put additional stress on the marital relationship. There were periods of unemployment. However, plaintiff eventually passed the Certified Public Accountant (CPA) exam and worked as an accountant from approximately 1992 until 1996. He has since allowed his license to lapse, and is employed as a revenue officer by the State of Rhode Island Division of Taxation, earning approximately $29,500 per year. Despite the parties' relatively modest incomes, they were successful in acquiring substantial assets composed mostly of stocks and bonds and some bank certificates of deposit.

In an oral decision rendered on October 21, 1998, the magistrate granted both parties' petitions for an absolute divorce on the grounds of irreconcilable differences. The magistrate found that neither party was at fault for the breakdown of the marriage and distributed the marital estate equally between the parties. He also ordered the parties to maintain their health coverage for each other and for the children and to maintain any life insurance policies then in effect for the benefit of the children until age twenty-one.

I

In her appeal, defendant first challenges the magistrate's determination that the following bonds were marital assets and subject to equitable distribution under § 15-5-16.1:(1) East Providence bond ($100,000), (2) Burrillville bond ($10,000), (3) Kent County Water Authority bond ($15,000), (4) North Providence bond ($10,000), (5) Rhode Island Depositors Economic bond ($15,000), and (6) City of Warwick bond ($10,000). She next contends that the magistrate failed to consider all the statutory factors enumerated in § 15-5-16.1 when distributing the marital estate. We shall address both contentions *seriatim*.

A

■ It is well-established that the equitable distribution of property is a three-step process. *See Lancellotti v. Lancellotti*, 481 A.2d 7, 10 (R.I.1984). The first step is to "determine which assets are 'marital property' and which are 'non-marital property.'" *Id.* Next, the trial justice must take into account the factors set forth in § 15-5-16.1 and, finally, he or she must distribute the estate. *See Lancellotti*, 481 A.2d at 10.

In conducting the first part of the analysis, the magistrate first itemized all the parties' assets. The magistrate excluded from the marital assets a Dreyfus Class A Growth Account and a Fleet retirement account; only the interest accruing on those accounts was deemed marital in nature. Other assets, including a Rhode Island Hospital Trust Golden Passbook Account, a Putnam investment account in defendant's name, and fifty-one shares of Eaton Vance Corporation stock, were stipulated by the parties to be non-marital and

were excluded from the distribution of the estate. All other assets, including the bonds in question and the marital domicile, were deemed marital property. The magistrate also determined that the automobiles were marital property and awarded each party his or her respective automobile.

The defendant disputes only the inclusion of the bonds. She argues that the purchasing of the bonds in her name, specifically the East Providence bond, eradicated any intent on her part to make the funds marital property. We disagree.

In *Quinn v. Quinn*, 512 A.2d 848, 852 (R.I.1986), we stated that the "transfer of nonmarital assets from one spouse to both spouses jointly, in the absence of clear and convincing evidence to the contrary, will be understood as evincing an intention to transfer the property to the marital estate." This doctrine, known as transmutation, is consistent with the recognition that marriage is a partnership. *See id.* The provisions in § 15–5–16.1 are designed to achieve that end. *See Quinn*, 512 A.2d. at 852. In *Quinn*, the husband placed the proceeds from the sale of his inherited property, first, into a jointly held certificate of deposit and, then, ultimately, into a joint account. *See id.* at 852–53. We held that this action evinced an apparent consent to the wife's demand for an ownership interest in the funds. *See id.* at 853. The husband then used a portion of those funds to acquire a piece of realty, which he held jointly with his wife. *See id.* We said that "[s]uch an act [was] consistent with, and indicative of, an intent that the parcel become part of the marital estate." *Id.*

In the case at bar, plaintiff testified that both he and his wife had brought some cash into the marriage and that they held a joint checking account from which certain bonds had been purchased. The plaintiff testified that at one point during the marriage he became aware that the bond account and the statements from the Fleet One account, which covered the bond account, appeared in defendant's name only. The plaintiff requested that his name be put on both accounts and defendant agreed. Furthermore, defendant admitted in her testimony that the bonds, specifically the $100,000 bond, were purchased from the Fleet One account that she held jointly with her husband. These acts indicate an intent on the part of defendant to make the bonds part of the marital estate.

The defendant also argues that the bonds should be excluded from the marital estate because the proceeds used to purchase the bonds were traceable to her premarital investments. This included the sale of certain securities held by defendant before the marriage. This argument is equally without merit. In *Quinn*, the husband challenged the classification of certain securities as marital property on the grounds that certain inherited assets served as the source of money for those investments and were not part of the marital estate. *See Quinn*, 512 A.2d at 853. We held that when those inherited assets were commingled with assets that were not inherited, and those assets were "exchanged for other property, the newly acquired asset [was] marital property." *See id.* (citing *Anderson v. Anderson*, 584 S.W.2d 613 (Mo.Ct.App.1979)).

■ The magistrate acknowledged that even though most of the money in the joint account may have been premarital in nature, interest accrued on that money, thereby creating a commingling of funds. The bonds were then purchased with those funds. Following our analysis in *Quinn*, we conclude that the magistrate correctly determined that the bonds were marital in nature.

**B**

■ The defendant next challenges the distribution of the marital estate. It is her contention that she contributed more financially to the marriage than did plaintiff and that, while plaintiff studied for the CPA exam, she primarily supported the

family. She contends that the magistrate did not take into consideration all the factors enumerated in § 15–5–16.1, particularly her contributions and support while plaintiff studied for his CPA exam and worked at a reduced salary. As a result of these endeavors, defendant argues, she was entitled to more than 50 percent of the marital estate. In addition, defendant asserts that it was an abuse of discretion to award 50 percent of the marital domicile to plaintiff because the source of that property was a gift to the parties by defendant's parents, although she does not dispute that the domicile is marital property.

Section 15–5–16.1, our equitable-distribution statute, provides in pertinent part, as follows:

"Assignment of property.—(a) In addition to or in lieu of an order to pay spousal support made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the following:

(1) The length of the marriage;

(2) The conduct of the parties during the marriage;

(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;

(4) The contribution and services of either party as a homemaker;

(5) The health and age of the parties;

(6) The amount and sources of income of each of the parties;

(7) The occupation and employability of each of the parties;

(8) The opportunity of each party for future acquisition of capital assets and income; .

(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;

(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;

(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration;

(12) Any factor which the court shall expressly find to be just and proper."

The defendant asserts that the magistrate considered only the conduct of the parties in dividing the estate equally. She bases this assertion on the magistrate's comment during trial, but before defendant's testimony, that "as to the fault aspect I can find none. I say that because it would appear at this juncture a $^{50}\!/_{50}$ case." The magistrate also commented in his decision that "[a]t this juncture the Court will find neither party at fault in the breakup of the marriage. So that, the estate to be considered momentarily will be divided 50/50."

We encountered a similar factual situation in *Gervais v. Gervais*, 688 A.2d 1303 (R.I.1997). In that case, the trial justice emphasized two of the statutory factors, but the Court was able to glean from the record the trial justice's appreciation for and general reference to the other statutory criteria. *See id.* at 1307. We stated that "[a]s long as this Court is able to review a lower court's decision and to determine therefrom that all the necessary facts and statutory factors were considered, we shall not require that court to explain its considerations in a particular or a single pr[e]scribed manner." *Id.* at 1308.

A review of the record in the instant case reveals that the magistrate enumerated and discussed each factor, even if briefly. With respect to each party's contribution to the acquisition and preservation of assets, the magistrate found that both par-

ties participated in the selection of bonds and other investments. He also noted that defendant dissipated many of the assets during the course of the divorce proceedings. While defendant may have made greater contributions financially in acquiring the assets, plaintiff testified that they evaluated their assets together, deciding whether to purchase more bonds, keep the certificates of deposit, or purchase stock. The plaintiff also testified that the money was invested as both he and his wife deemed appropriate to their future and their children's future. Additionally, the magistrate acknowledged defendant's contributions as a good wife and homemaker, and also noted plaintiff's claim that he provided for the outdoor maintenance of the marital domicile. With respect to factor (9), defendant contends that the magistrate overlooked her financial support of plaintiff while he obtained his CPA license. We note that the magistrate did not specifically refer to the CPA license; however, this alone does not constitute a conclusive factor that would require an increased share of the estate to be awarded to defendant. Upon receiving his license, plaintiff obtained employment at an increased salary level, which benefited the marriage partnership.

With *Gervais* providing the deferential standard against which this Court may review the distribution of property, it is our opinion that the magistrate in the instant case met those requirements, even if he did not discuss each factor with particularity. Therefore, we hold that the magistrate did not abuse his discretion in awarding an equal share of the marital estate to both parties.

■ With respect to the marital domicile, defendant contends that she was entitled to a greater share because her parents gave the home to the parties and plaintiff had no interest in it save as a result of the marriage. This argument is not persuasive. It is undisputed that the domicile is marital property, and as such it is subject to fair and just assignment. *See*

*D'Agostino v. D'Agostino*, 463 A.2d 200, 203 (R.I.1983). In *Cloutier v. Cloutier*, 567 A.2d 1131, 1132–33 (R.I.1989), this Court reduced the wife's share in the marital domicile from 80 percent to 60 percent despite the significant contributions by the wife's father. Of particular significance in that case was the fact that the father gave the domicile to both the husband and the wife. *See id.* Similarly, here, the marital domicile was held in *joint names*. A review of the evidence also shows that both parties contributed equally to the maintenance and upkeep of the marital domicile, with defendant primarily taking care of the interior maintenance and plaintiff providing for the exterior maintenance. The fact that defendant's parents contributed to the acquisition of the home is insufficient to support defendant's contention that she is entitled to a greater share of the marital domicile. We hold that the magistrate did not abuse his discretion in awarding an equal share in the home to both parties.

## II

■ Next, defendant challenges the magistrate's order to maintain life insurance policies for the benefit of the children until they reach age twenty-one. We have previously held that such orders constitute reversible error when there are no findings of fact sufficient to justify the orders pursuant to § 15–5–16.2. *See Perreault v. Perreault*, 540 A.2d 27, 29 (R.I.1988). The Family Court's ability to compel the parties to pay support is limited by the statutory authority that the Legislature has granted to the court. *See Adam v. Adam*, 624 A.2d 1093, 1098 (R.I.1993). Subsection (b) of § 15–5–16.2 provides in pertinent part:

"The court may, if in its discretion it deems it necessary or advisable, order child support and education costs for children attending high school at the time of their eighteenth birthday and for ninety (90) days after graduation, but in no case beyond their nineteenth (19th) birthday. In addition, the court may

order child support to continue, in the case of a child with a severe physical or mental impairment, until the twenty-first (21st) birthday of the child."

■ Based on our precedent and the statutory mandate, we modify the magistrate's order with respect to the daughter, Jacklyn Leigh. She shall remain a beneficiary on any insurance policies only until she reaches age eighteen, or ninety days after her high school graduation, but no later than her nineteenth birthday. As to John Charles, the record indicates that he suffers from an extreme case of attention deficit disorder and is currently in the custody of DCYF as a result of repeated altercations with his parents. Such a condition is sufficient to satisfy the mental impairment exception contained in the statute. Therefore, he shall remain a beneficiary on the policies until he reaches age twenty-one, as previously ordered by the magistrate, unless it can be shown that his mental disability has been ameliorated, in which case, either party may seek to modify the order.

### III

■ Lastly, defendant contends that the magistrate was biased and prematurely judged the case by stating on the record that it was a "50/50 case" before all the testimony had been heard. At various other points during the trial the magistrate commented that defendant's case was going downhill. We note at the outset that this issue is being raised for the first time on appeal and that defendant neither objected to the comments during trial, nor did she move for a mistrial or disqualification of the magistrate. ·

We do agree with the defendant that certain of the remarks and statements made by the magistrate were less than temperate and should have been couched in more judicious terms. In some instances, counsel for defendant may have been discouraged from more vigorous argument on behalf of his client.

We have previously held that in order affirmatively to establish personal bias or prejudice, a litigant must show that such bias or prejudice is because of a preconceived or settled opinion and that mere criticism is not sufficient. *See Cavanagh v. Cavanagh,* 118 R.I. 608, 621–22, 375 A.2d 911, 917–18 (1977). After reviewing the record, we conclude that defendant has not met her burden.

A review of the trial transcripts reveals that the magistrate was upset that defendant had invaded several separate joint bank accounts and dissipated thousands of dollars in violation (arguably) of a court order. Additionally, the magistrate listened to defendant testify in regard to the percentages of the various assets to which she believed she was entitled, specifically 60 percent of her husband's pension, but 100 percent of her own. In response to her testimony, the magistrate commented that, "I'm not faulting her but [her] ideas are way off from any case law, statutory law or otherwise. I heard her say that what's his is hers, what's hers is hers and what's theirs is hers by percentage. Doesn't work that way." The magistrate's frustration with defendant was apparent; however, this hardly rises to the level of bias or inclination necessary for premature judgment. Moreover, there is no indication that any extrajudicial source influenced the magistrate's decision, nor that he based his decision on facts and events not before the court. *See In re Antonio,* 612 A.2d 650, 653 (R.I.1992) (citing *In re Kean,* 520 A.2d 1271, 1277 (R.I.1987); *State v. Nidever,* 120 R.I. 767, 390 A.2d 368 (1978)). Rather, the magistrate's award was based on the evidence and testimony put forth by the parties. The defendant's belief that she was entitled to a greater share of the estate is insufficient to show bias.

Accordingly, the defendant's request for a new trial is denied.

### CONCLUSION

For the aforementioned reasons, the defendant's appeal is denied and dismissed.

The decision pending entry of final judgment of the Family Court is affirmed with the proviso that the order for the continuation of the insurance policies for the minor children be modified in accordance with the provisions set forth in this opinion. The papers in the case are remanded to the Family Court.