Giacomo D'AGOSTINO

v.

Gina J. D'AGOSTINO.

81–3–Appeal.

Supreme Court of Rhode Island.

July 29, 1983.

Robert S. Ciresi, North Providence, for plaintiff.

Thomas E. Hefner, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a divorce decree entered in Family Court in which the trial justice granted the husband's (plaintiff's) petition and the wife's (defendant's) cross-petition for divorce based on irreconcilable differences. The husband had filed a petition for divorce alleging that the parties had been living apart for the past three years and that irreconcilable differences between them had caused the irremediable breakdown of the marriage. The wife filed a cross-petition for divorce based on irreconcilable differences and sought support payments, counsel fees, and an assignment of the marital property. At trial, the husband moved for an assignment of property.

In granting both petitions for divorce, the trial justice determined that both parties were entitled to support. However, the trial justice did not award either party support but made the marital-property assignment based on the support needs of them both. She ordered plaintiff to convey his right in the marital home to defendant and give defendant exclusive possession and title to all the household furnishings and effects. In turn, defendant was ordered to pay plaintiff $11,000 for his share in the conveyed property as well as to surrender

$450 worth of Sperry Rand stock. Any further support for either plaintiff or defendant was denied.

Two issues are raised on appeal: (1) whether the Rhode Island equitable-distribution statute, G.L.1956 (1981 Reenactment) § 15–5–16.1 is unconstitutionally vague; and (2) whether the trial justice erred in distributing the marital property by taking into consideration the support needs of the parties.

I

The plaintiff maintains that § 15–5–16.1 provides no useful standards to guide a Family Court justice in dividing up the marital property and thus violates plaintiff's due-process rights. It is not argued that the state lacks a compelling public interest, through the exercise of its police power, to divide the marital property of spouses upon entry of a divorce decree.[1] Rather, plaintiff simply maintains that the statute is so broad, vague, and arbitrary that the Family Court justice may arbitrarily assign property.

We initially note that "vagueness" analysis is invoked primarily to invalidate criminal statutes or regulatory statutes whose indefinite language allows an unconstitutional impingement on First Amendment freedoms. The Supreme Court has stated:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad*

*hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" * * * than if the boundaries of the forbidden areas were clearly marked.' " [citations omitted.]

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972). However, the Supreme Court has held the "void for vagueness" doctrine applicable to civil as well as criminal actions. *Boutilier v. Immigration Service,* 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661, 665 (1967). The doctrine generally applies to statutes that regulate or proscribe conduct. *Id.*

In the case at bar, we do not conclude that the vagueness analysis is entirely inappropriate. We are of the opinion that the due-process issue presented is whether the statute sets forth guidelines of sufficient clarity and objectivity to guard against an arbitrary or *ad hominem* result. *See* Note, *Due Process Requirements of Definiteness in Statutes,* 62 Harv.L.Rev. 77, 77 (1948).

Section 15–5–16.1 sets forth criteria that the court must consider before assigning marital property: (1) the length of the marriage; (2) the conduct of the parties during the marriage; (3) the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates; and (4) the contribution of either party as a homemaker. These criteria provide adequate and reasonable guidelines for the courts to follow. Each guideline helps to establish the nature and quality of the marital assets as well as each spouse's contribution to the value of the marital property. We are not per-

---

1. The power of the state over marriage and divorce is complete except as limited by specific constitutional provisions. *Loving v. Virginia,* 388 U.S. 1, 7–12, 87 S.Ct. 1817, 1821–23, 18

L.Ed.2d 1010, 1015–18 (1967); *see Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 726 (1888), 31 L.Ed. 654, 657–58.

suaded by the fact that other jurisdictions may have more enumerated guidelines than the Rhode Island statute. Thus we find § 15–5–16.1 constitutional.

## II

The plaintiff also argues that the trial justice erred by subjectively taking into consideration the factors listed in the Rhode Island alimony statute when she made a distribution of the marital property. In ruling on plaintiff's petition for divorce and assignment of property, and defendant's cross-petition for divorce, support, and assignment of property, the trial justice began by considering the length of the marriage, and the health, age, station, occupation, vocational skills and employability of the parties. Considering the expense sheets and the conduct of the parties during the marriage, she held that both plaintiff and defendant were entitled to support. However, the trial justice did not award support to either party but turned instead to the assignment-of-property statute. She considered the length of the marriage and the conduct of the parties in more detail. Specifically, plaintiff had made financial contributions up to a point three years before the trial, and defendant had contributed as a homemaker and had preserved the value of the real estate by doing work "around the house." The trial justice then ordered plaintiff to assign his interest in the property to defendant "in lieu of awarding a support order" and directed defendant to execute a note or mortgage in the amount of $11,000 to plaintiff for his interest.

Section 15–5–16 provides that in determining the amount of alimony the Family Court "shall consider the length of the marriage; the conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and the state and the liabilities and needs of each of the parties." Section 15–5–16.1, as amended by P.L.1982, ch. 403,

§ 1, states that "[i]n addition to or in lieu of an order to pay alimony * * * the court may assign to either the husband or the wife a portion of the estate of the other" after considering the length of the marriage; the conduct of the parties during the marriage; the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates; and the contribution and services of either party as a homemaker. The court may not assign property or an interest in property held by one of the parties if the property was held by the party prior to the marriage. Moreover, the statute directs the Family Court justice to make an assignment of property, if any is to be made, before the award of alimony, as the needs of each party will be affected by the assignment.

Alimony is historically based on the common-law duty of a husband to support his wife. Inker, Walsh, & Perocchi, *Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts,* 10 Suffolk U.L.Rev. 1, 11 (1975). Traditional property concepts considered a married couple an indivisible unit. All property, however, was held by the husband. *Id.* at 12. Furthermore, because a marriage was insoluble, the only form of divorce available at common law was a divorce *a mensa et thoro*[2] which did not destroy the marital bond. Thus, an award of alimony was a logical extension of a husband's common-law duty to support his wife. *Id.* at 13. When absolute divorces and married-woman property acts came into existence, however, the basis and purpose of alimony became less clear. If the marital bond was dissolved by absolute divorce, no reason existed for a husband's continued support of his wife. Alimony in its modern form became a rehabilitative tool designed to provide support for an ex-spouse based on need. *See* Note, *Property Division and Alimony Awards: A Survey of Statutory Limitations on Judicial*

---

**2.** A divorce a *mensa et thoro* was a divorce from bed and board and is equivalent to the

modern separation. *See* Clark, *Law of Domestic Relations in the United States* 420 (1968).

*Discretion,* 50 Fordham L.Rev. 415, 429 (1981).

 Property division is a recent development and is based on the theory of joint contribution to the marital partnership. Its intent is to provide a fair and just assignment of the marital assets. *See Gibbons v. Gibbons,* 174 N.J.Super. 107, 112–13, 415 A.2d 1174, 1177–78 (Super.Ct.Ch.Div.1980). The partnership concept recognizes that noneconomic contributions are as essential to a marriage as financial contributions and therefore entitle a "homemaker spouse" to a share of the marital assets. Thus, it is important that the distinction between alimony and marital-property division not be blurred.[3]

The factors enumerated in the Rhode Island statute, G.L. 1956 (1981 Reenactment) § 15–5–16.1, clearly emphasize the partnership theory of marriage and focus on an equitable distribution of the marital assets. *See* Note, *Property Division and Alimony Awards, supra* at 439–40 n. 172. The length of a marriage bears directly on the equities of distribution. A court would not make the same assignment for a two-year marriage as it would for a twenty-year marriage. Second, each spouse's conduct during the marriage will indicate each spouse's contribution as well as failure of contribution. Third, each spouse's contribution as a homemaker takes into consideration the noneconomic benefits that are essential to a marriage. *See Rothman v. Rothman,* 65 N.J. 219, 229, 320 A.2d 496, 501–02 (1974). Finally, each spouse's acquisition, preservation, or appreciation in value of their respective estates establishes the nature and value of the marital assets.

Clearly, the assignment of property does not depend on the needs of a spouse.

Moreover, § 15–5–16.1 directs the Family Court justice to make the assignment of property before an award of alimony. Therefore, the Family Court justice erred when she took into consideration the support needs of the parties in distributing the marital assets.[4] The plaintiff's appeal is denied in part and sustained in part. The case is remanded to the Family Court for a reassignment of the marital property consistent with the guidelines set out in the statute and in this opinion.

---

**3.** It should be noted that the language in § 15–5–16.1, "in addition to or in lieu of," indicates that property assignment is something other than alimony. *See* Inker, Walsh & Perocchi, *Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts,* 10 Suffolk U.L.Rev. 1, 5 (1975).

**4.** Because a purpose of property division is to effect as complete a settlement of financial obligations between the parties as is possible, the Family Court should be cautious not to assign to the prospective alimony recipient property that is a liability, and, concomitantly, said court should, to the extent possible, award to the prospective alimony recipient income-producing property. Inker, Walsh, & Perocchi, 10 Suffolk U.L.Rev. at 10–11.