**Edna L. CONLEY**

v.

**Augustus F. CONLEY.**

**No. 83–580–Appeal.**

Supreme Court of Rhode Island.

May 9, 1986.

Paul J. Russo, Kirshenbaum & Kirshenbaum, Cranston, for plaintiff.

Augustus F. Conley, pro se.

OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the husband (defendant) from a Family Court decree in which the trial justice granted the wife's (plaintiff's) petition on the ground of irreconcilable differences.

The facts are as follows. The plaintiff and defendant were married on February 8, 1947, and had six children, all of whom

were over eighteen years of age at the time of trial. Two of the children lived with plaintiff during this time, and another child lived with her when he was home on leave from the Coast Guard.

The wife testified that problems began shortly after the couple married. According to her, defendant drank heavily throughout most of the years of the marriage. She stated that when defendant was intoxicated he became very agitated, angry, and abusive and that he verbally insulted and threatened her and sometimes physically assaulted her.

The plaintiff stated that she made numerous attempts to cope with her husband's drinking; she attended Al-Anon meetings for several years and also encouraged defendant to seek help through Alcoholics Anonymous. In addition, plaintiff sought marriage counseling from several priests for a period of time. However, despite her attempts to help defendant and save their marriage, the problems worsened.

The plaintiff subsequently filed a petition for divorce on September 17, 1981, on the grounds of irreconcilable differences. After hearing, the trial justice granted the wife's petition and assigned the marital home, along with the basic household furnishings to her. To defendant, the trial justice further assigned the bonds, the bank account, a lump-sum payment of $3,900 that he had received as part of his pension, and the remaining pension fund. The insurance policies were assigned to the party in whose name each was written, and the automobiles were ordered to remain in the possession of whichever party had them. The trial justice denied plaintiff an award of alimony on the basis of defendant's inability to pay and also issued a restraining order to prevent defendant from harassing plaintiff or from entering the house.

The defendant, who represented himself,[1] filed a notice of appeal on October 3, 1983. Meanwhile, the trial court continued the case to October 6, 1983, to determine whether defendant had executed a quitclaim deed to the property in compliance with the court's order. On that date, defendant refused to sign the deed and was consequently adjudged in contempt. The trial justice ordered defendant committed to the Adult Correctional Institutions but released him later that day when he agreed to sign the deed on the condition that it be held in the registry of the court pending this appeal.

On appeal defendant raises the sole issue of whether the trial justice erred in awarding plaintiff his share in the marital domicile. We hold that there was no error.

General Laws 1956 (1981 Reenactment) § 15–5–16.1, the equitable-distribution statute, sets forth the criteria that the court must consider before assigning "to either the husband or wife a portion of the estate of the other": (1) the length of the marriage; (2) the conduct of the parties during the marriage; (3) the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estate; and (4) the contribution and services of either party as a homemaker. *D'Agostino v. D'Agostino*, 463 A.2d 200 (R.I.1983).

The defendant argues that assignment of the house to plaintiff was inequitable based upon defendant's financial contributions to the marriage. The plaintiff in turn asserts that there was no error in the assignment since the trial justice carefully reviewed the evidence in light of the relevant factors enumerated in the equitable-distribution statute.

The record reveals that the trial justice specifically reviewed each of the enumerated factors in the statute and made the necessary findings of fact regarding the

1. The defendant was initially represented by attorney Marjorie Yashar. However, Ms. Yashar requested that she be allowed to withdraw as counsel for defendant on the grounds of an irremediable breakdown of the attorney-client relationship, which request was granted on September 28, 1983.

relationship between the parties and the status of the marital assets. She found that plaintiff had conducted herself properly at all times as a wife and was the principal homemaker, caring for defendant and their six children. The trial justice also determined that defendant had admitted that he was a heavy drinker and that his conduct solely and totally contributed to the breakdown of the marriage. She further found that when the parties separated in 1981, defendant took with him a number of bonds worth between $4,800 and $5,000, a bank account containing $1,000, and $3,900 that constituted a lump-sum payment from his employment pension and converted these to his own use.

The record also reveals that plaintiff was employed as a part-time cashier at a supermarket and that her net weekly pay was approximately $126.39. She stated that she also received $60 a week from her daughters ($30 each) who lived with her. The defendant testified that he was unemployed at the time of trial and was receiving $509 a month as a pension from the Teamsters Union. He further stated that he was living with his nephew and was paying him $300 a month for rent.

The record below discloses that the marital domicile located at 14 Eldridge Avenue in Warwick was purchased in the late 1950s for approximately $9,500, with resources from both parties, that the wife and the children performed most of the maintenance work around the house, and that defendant contributed very little as a result of his frequent states of intoxication. The defendant stated that he did help to put a new roof on the house about ten years earlier and that he had also put in a dry well with the assistance of one of his sons about twenty years earlier.

It is well settled that this court will not disturb a trial justice's findings unless he or she has overlooked or misconceived evidence or was otherwise clearly wrong. *Sattari v. Sattari*, 503 A.2d 125 (R.I.1986); *Casey v. Casey*, 494 A.2d 80 (R.I.1985); *Wordell v. Wordell*, 470 A.2d 665 (R.I. 1984); *Brierly v. Brierly*, 431 A.2d 410 (R.I.1981). In awarding plaintiff the husband's interest in the marital domicile, the trial justice found that the evidence clearly supported plaintiff's position. A review of the record discloses that the trial justice was cognizant of the statutory requirements and neither overlooked relevant evidence on any material issue nor was otherwise clearly wrong. The facts in this case are distinguishable from the situation in *Sattari*.

In *Sattari* we held that the trial justice had erred in assigning all of the marital assets to the wife where both parties had contributed to the preservation of the assets and neither party had been significantly responsible for the breakdown of the marriage.

In contrast to *Sattari*, the trial justice specifically found here that based on the plaintiff's conduct and contributions during the marriage and the husband's abusive conduct and limited participation in preserving the marital domicile, the plaintiff was entitled to the property under § 15–5–16.1. Therefore, the trial justice's decision to assign the marital domicile to the plaintiff was not error.

For the reasons stated, the husband's appeal is denied and dismissed, the judgment of the Family Court is affirmed, and the case is remanded to the Family Court for further proceedings consistent herewith.