Milton **STANZLER**

v.

Phyllis **STANZLER.**

No. 88–459–A.

Supreme Court of Rhode Island.

June 21, 1989.

Milton Stanzler, Cerilli, McGuirl, Hustwit & Bicki, William J. McGair, Providence, for plaintiff.

Dewitt T. Kersh, Jr., Tillinghast, Collins & Graham, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before us on appeal from a judgment of divorce entered in

Family Court. The plaintiff, Milton Stanzler, filed a petition for divorce, alleging that the parties had been living separate and apart for three years. Thereafter the defendant, Phyllis Stanzler, filed a cross-petition for divorce based on irreconcilable differences and the plaintiff's gross misbehavior repugnant to the marriage covenant. The trial justice denied the plaintiff's petition and instead granted the defendant's cross-petition for divorce.

The facts pertinent to this appeal are as follows. The plaintiff and defendant were married on September 8, 1951, and subsequently two children were born of the marriage. Both children were emancipated at the time of the divorce proceedings. Prior to the marriage defendant was employed as a social worker and was working toward a master's degree at Boston University's School of Social Work. During the marriage, however, plaintiff was the principal income earner while defendant was primarily responsible for the maintenance of the home, the care of the children, and the organizing of social activities.

At trial plaintiff testified that in 1962 the parties purchased a marital home on Blackstone Boulevard in Providence. Additionally plaintiff stated that the parties had had a fairly happy, or at least "very civil," marriage. In 1980, however, plaintiff informed his wife that he was seeing another woman. The plaintiff explained that he would see this other woman some weekends and would see defendant other weekends.

In October 1980 plaintiff moved in with the other woman after an unsuccessful attempt at a reconciliation with defendant. Nevertheless, plaintiff invited defendant on a trip to St. Martin in January 1981. Subsequently plaintiff moved back into the marital home and stayed until March 1981. Although plaintiff testified that he did not reside in the marital home after this time, he continued to pay all the bills associated with the home.

The plaintiff rented a condominium in the fall of 1981 and exercised an option to purchase that property in December of that year. The plaintiff stated that he was interested in reconciling with defendant at that time so he placed the title of the property in both parties' names. In addition plaintiff testified that he continued to try to see defendant in 1982 "with the idea of going back." In July or August 1982 the couple took a trip to Maine. Although plaintiff did not believe that the couple had conjugal relations, he noted that they stayed in the same room.

The plaintiff admitted that he and defendant repeatedly attempted to reconcile until April 1985. For example, plaintiff voluntarily withdrew a previously filed divorce petition in March 1984. At that time plaintiff was residing in a carriage house on East Manning Street, Providence. He stated that he talked with defendant about purchasing the home because he believed "it would be a wonderful place for us to live."

According to defendant, plaintiff alternated seeing the other woman and seeing her between 1980 and 1982. The defendant, moreover, contradicted plaintiff's testimony regarding the Maine vacation, stating that the couple had marital relations during the trip and several times thereafter. The defendant also stated that even after plaintiff moved out of the home, they continued to see each other regularly. She agreed with plaintiff's testimony that they continually attempted to reconcile until early 1985. During the period of attempted reconciliation, defendant noted, the couple sought marital counseling on several occasions.

In the spring of 1985 plaintiff revealed to defendant that he wished to terminate the marriage. The plaintiff then filed a petition for divorce in Family Court on November 19, 1985. The trial justice found, on the basis of all the evidence presented, that plaintiff failed to establish that the parties had lived separate and apart for three years prior to the filing of the divorce petition. Instead the trial justice granted defendant's cross-petition for divorce, determining that plaintiff was guilty of gross misbehavior and conduct repugnant to the marriage covenant and that irreconcilable differences existed between the parties.

The judge then reviewed the assets of the parties and assigned property in accordance with the statutory requirements of G.L.1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L.1982, ch. 403, § 1. Among other assets, the trial justice awarded the marital home to defendant. Finally, he awarded defendant a specific amount of alimony for a five-year period. The plaintiff's appeal followed.

■ The plaintiff first maintains that the trial justice erred in denying his petition for divorce pursuant to G.L.1956 (1981 Reenactment) § 15–5–3, as amended by P.L. 1984, ch. 233, § 1. We have previously held that the purpose of § 15–5–3 is to free a husband and a wife who have lived separate and apart for a three-year period from the bond of marriage. *Camire v. Camire*, 43 R.I. 489, 491, 113 A. 748, 749 (1921). The divorce decree, however, is not granted as a matter of right, *Smith v. Smith*, 54 R.I. 236, 239, 172 A. 323, 324 (1934), but on the basis of the parties' failure to reconcile. *McKenna v. McKenna*, 53 R.I. 373, 375, 166 A. 822, 822–23 (1933). Therefore, we have interpreted the statute to require not only that a couple live separate and apart for the three-year period but that the ordinary and usual relations that exist between married persons, including intercourse, must not continue. *Stewart v. Stewart*, 45 R.I. 375, 377, 122 A. 778, 778 (1923).

■ Initially we note that findings of fact by a trial justice in a divorce action will not be disturbed unless the justice misconceived the relevant evidence or was otherwise clearly wrong. *Perreault v. Perreault*, 540 A.2d 27, 29 (R.I.1988). The trial justice found that plaintiff failed to establish clearly that the parties had been living separate and apart for the required period. Although testimony was presented that the parties had not engaged in marital relations since the summer of 1982, the presence of intimate activity alone is not the critical factor. Both parties testified that they actively tried to reconcile until early 1985. Additionally, the couple continued to see each other, sought marriage counseling, and held themselves out as husband and wife until at least 1984. There-

fore, we find that the trial justice did not misconceive the relevant evidence, and we hold that plaintiff's divorce petition was properly denied.

Next plaintiff asserts that the trial justice incorrectly assigned property pursuant to § 15–5–16.1. Specifically plaintiff contests the trial justice's inclusion of certain items as marital property. First, plaintiff contends that a $25,000 loan to his daughter and son-in-law to purchase a house and a $100,000 note from plaintiff to Oceancliff Condominiums in Newport should not have been included in the marital assets. Second, plaintiff argues that the judge erred in treating a $60,000 certificate of deposit (CD) earmarked by plaintiff for the payment of taxes as assignable marital property. Instead plaintiff suggests that the tax liability should have been deducted from the marital estate prior to distribution of the assets. Third, plaintiff avers that the marital domicile should have been sold and the proceeds invested, enabling defendant to live in a more modest home and still retain substantial cash assets.

■ It is well established that the intent of property division is to provide a fair and just assignment of the marital assets, *D'Agostino v. D'Agostino*, 463 A.2d 200, 203 (R.I.1983), on the basis of the joint contribution of the spouses to the marital enterprise. *Wordell v. Wordell*, 470 A.2d 665, 667 (R.I.1984). Property division, however, does not require an equal division of the property, *Casey v. Casey*, 494 A.2d 80, 82–83 (R.I.1985), and is subject to the concept that nonmonetary, as well as monetary, contributions may enhance the marital partnership. *Wordell*, 470 A.2d at 667. In dividing property, a trial justice must decide which assets are marital property, consider the contribution of each party, and then distribute the property. *Lancellotti v. Lancellotti*, 481 A.2d 7, 10 (R.I.1984). Finally we note that a trial justice's assignment of property will not be overturned unless it constitutes an abuse of discretion. *Centazzo v. Centazzo*, 509 A.2d 995, 997 (R.I.1986).

■ We believe that sufficient evidence exists to support the trial justice's ruling

that the $25,000 loan and the $100,000 note were divisible assets. In regard to the $100,000 note, the trial justice specifically stated that he was not satisfied that the note was uncollectable. The plaintiff also admitted at trial that the $25,000 loan was for a down payment on the property that he co-owns with his daughter and son-in-law. Therefore, we agree with the trial justice's finding that plaintiff had a continuing part interest in the property that was subject to equitable distribution.

■ Additionally plaintiff's contention that the earmarked CD was no longer part of the assignable marital property is without merit. The trial justice's directive to plaintiff to pay federal and state taxes was part of the justice's total assignment of property. Finally we believe that the assignment of the marital domicile to defendant was within the trial justice's discretion. We therefore find that the trial justice did not abuse his discretion and properly assigned the marital assets after carefully weighing all the factors set forth in § 15–5–16.1.

■ The plaintiff also contends that the trial justice committed an error of law by arbitrarily awarding alimony to defendant. The trial justice determined that defendant was entitled to alimony for a five-year period pursuant to § 15–5–16, as amended by P.L.1984, ch. 79, § 1. The defendant was awarded $3,000 per month for one year, $2,000 per month for the second and third years, and $1,000 per month for the fourth and fifth years.

Section 15–5–16 sets forth four factors that a trial justice must consider in awarding spousal maintenance: "[1] the length of the marriage; [2] the conduct of the parties during the marriage; [3] the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and [4] the state and the liabilities and needs of each of the parties." Moreover, a trial justice must consider these criteria in light of the fact that alimony in its modern form is no longer an extension of a husband's common-law duty to support his wife but is a rehabilitative tool designed to provide support for an ex-spouse based on need. *D'Agostino*, 463 A.2d at 202. The award should be payable for a short and definite period that allows a recipient to become financially independent.

In awarding defendant alimony, the trial justice noted that the parties had been married for thirty-six years and that plaintiff was solely responsible for the breakup of the marriage. The trial justice also stated that plaintiff was at the time sixty-seven years old and in good health, whereas defendant was sixty and suffering from angina and high blood pressure. Finally, the trial justice noted that plaintiff is a distinguished member of the Rhode Island bar and has had an income of approximately $122,000 per year over the last five years, whereas defendant has not been employed for a number of years.

We believe that the trial justice properly considered the standards elaborated in § 15–5–16. He specified the exact amount of alimony and limited the duration of payment. The trial justice also found that the plaintiff's testimony regarding his retirement was not believable and stated that the defendant would need time to rehabilitate herself. Lastly, the trial justice commented that the plaintiff has enjoyed a high-income-bracket lifestyle. Therefore, we hold that the trial justice did not commit an error of law and properly granted the defendant alimony.

For the reasons stated, the plaintiff's appeal is denied and dismissed. The judgment appealed from is affirmed, and the case is remanded to the Family Court for further proceedings consistent with this opinion.

WEISBERGER and SHEA, Justices, concurring.

We are in agreement with the majority that the assignment of assets made by the trial justice was within the bounds of his discretion, bearing in mind the criteria that must be applied pursuant to G.L.1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L.1982, ch. 403, § 1.

However, in light of the substantial assets distributed to the wife, assets valued

at approximately $627,000, we have some doubts about the propriety of awarding rehabilitative alimony to her for a five-year period. It should be noted that by the end of this five-year period the husband will have reached his seventy-third year. It is not ordinarily expected that one of postretirement age will continue to maintain the same level of earnings as he has had in earlier years. The practice of law is a highly competitive profession and requires great physical and mental stamina in order to achieve the level of earnings upon which the trial justice apparently based his order.

Even though we are somewhat uncertain about the ability of the husband to sustain the level of earnings to which he has been accustomed during the entire period for which alimony has been provided, we refrain from dissenting because in the event that circumstances change, he would have the remedy of seeking a modification of this support order in accordance with § 15-5-16, as amended by P.L.1984, ch. 79, § 1.