Carol A. FARRELLY

v.

George W. FARRELLY.

No. 97–20–Appeal.

Supreme Court of Rhode Island.

Dec. 15, 1997.

John D. Lynch, Warwick.

John E. McCann, Pawtucket.

## ORDER

This case came before a hearing panel of this Court on November 18, 1997, pursuant to an order assigning the plaintiffs appeal to the motion calendar pursuant to Supreme Court Rule 12A(6)(c) and directing both parties to appear and show cause why the issues raised in the appeal should not be summarily decided. Counsel for the parties have been heard, their arguments and legal memoranda considered, and we conclude therefrom that cause has not been shown and the plaintiffs appeal will be decided at this time.

The plaintiff, Carol A. Farrelly (Carol), and the defendant, George W. Farrelly (George), were married on June 24, 1972. Some twenty-three unblissful years later on October 11, 1995, Carol petitioned the Family Court for an absolute divorce citing as grounds therefor "irreconcilable differences between the parties which have caused the irremediable breakdown of the marriage." George responded to Carol's petition by counterclaim, requesting that he be granted an absolute divorce for the same reason as alleged by Carol. Following a four-day-trial before a master in the Family Court, the master, on September 4, 1996, entered an amended decision pending entry of final judgment granting both Carol's petition for an absolute divorce and George's counterclaim for an absolute divorce "on the grounds that there exist between the parties irreconcilable differences which have caused the irremediable breakdown of the marriage." The master granted joint custody of the couple's remaining minor child to Carol and George, with physical possession "remaining with Carol." While ordering George to pay $300.00 per week to Carol for the support of the minor child, he denied Carol's request for alimony.

In addition, the master:

"4. Having considered the facts in 15–5–16, it is the court's decision and the court so finds that the conduct of the Plaintiff (Carol) was totally responsible for the breakup of this marriage.[1] The Court therefore, awards to the Defendant (George) 60% of the entire marital estate and 40% of same to the Plaintiff herein." [2]

The master thereafter quite generously noted in his amended September 4, 1996 decision that because of George's age, forty-nine, his good health and educational background, and his annual income of $174,685 for the year 1995 as plant manager for the Cavanaugh Company, that he would be "allowed to waive his request for alimony" from Carol, who was found by the master to be forty-six years of age and "presently employed part-time working two days per week earning some relatively insignificant amount at the present time . . ."

The master in disposing of Carol's request for an award for alimony noted in his amended decision as follows:

"11. The Plaintiff however seeks an award of alimony and our Supreme Court said time and time again that alimony is meant to be rehabilitative in nature and not punitive. The Court has dealt above

---

**1.** George's testimony at trial was that Carol nagged him throughout the marriage causing him undue stress. When asked "[w]hat was the worse you could say about your wife," he responded:

"A. I'm not going to say anything bad about my wife. She's a good mother. She is a good person. You know, what went on between the two of us I don't—I don't—I think I explained that, but I don't want to say anything bad about her.

Q. But to your knowledge was she at all times a good and faithful wife and at all times ob-served the obligations of the marriage covenant?

A. Absolutely, absolutely.

Q. So, would it be a fair statement to say that the two of you just drifted apart?

A. Yeah. Like I said, she is a good parent. She's not a bad person and a wonderful mother."

**2.** The master determined the total value of the marital estate to be $412,000, which included the marital home valued at $200,000.

with all of the factors to be considered relative to an award of alimony. Having found the Plaintiff herein 60% at fault, the Court need not go any future. [sic] It will be totally inappropriate to allow a wrongdoer to be compensated for faults created by that same individual. The request for alimony by the Plaintiff herein is denied."

It appears from our review of the trial transcripts and the master's amended September 4, 1996 decision pending entry of final judgment for divorce, that while the master correctly noted that "alimony is meant to be rehabilitative in nature and not to punish," *D'Agostino v. D'Agostino*, 463 A.2d 200, 202 (R.I.1983), he clearly failed to consider that his primary focus in considering whether to award alimony should have been "on the economic situation of the parties viewed in light of the financial exigencies of one spouse and the ability of the other spouse to meet those needs." *Marocco v. Marocco*, 571 A.2d 572, 575 (R.I. 1990); *Fisk v. Fisk*, 477 A.2d 956, 958 (R.I. 1984). At the hearing before the master, Carol had testified that she was essentially unemployed, under medical treatment and medication, receiving therapy for depression and weighed but ninety-three pounds. She testified that she intended in the future, depending upon the success of her medical treatment and if able to regain her weight, to be able to return to work in the nursing or medical fields. George, on the other hand, was in good health, gainfully employed as a general plant manger, earning in excess of $170,000 per year and young enough at heart to have taken up a relationship with a younger female named Melissa with whom he dined out, traveled with and escorted to various places. That relationship, it should be noted, began, according to George's testimony, in March of 1996, and, according to Melissa's testimony, in January of 1996, both dates being, however, while Carol and George were still married.

We believe that the master, in considering whether to award alimony, failed to properly assess Carol's rehabilitative need, which at minimum could have permitted an award of temporary alimony for a period of time sufficient to enable her to regain her health and obtain suitable employment. *See e.g., Stanzler v. Stanzler*, 560 A.2d 342, 345 (R.I.1989).

In addition, we conclude from the record before us that the master, in making his equitable distribution of the marital assets, had only incomplete records of Carol's contribution to the marital estate for the first eighteen years of the marriage. George, who furnished the marital estate financial records for the master's consideration, presented no records of Carol's earnings prior to the 1978 tax year.[3] In that year, the master did note that Carol's earnings were $10,270 and later by 1988 had increased to $15,000, at which time she gave up her employment. George, in 1978, had earned $12,000, two thousand dollars more than Carol. By 1988, when Carol gave up her employment to devote herself to the upbringing of their two children, George's earnings had risen to $78.000, and by 1995, to $174,685. While it clearly appears that George, by his earnings, contributed substantially more to the marital assets and estate, it is difficult for us to determine from the master's decision if, and to what extent, he factored into his determination and distribution of the marital estate not only Carol's earnings during the first eighteen years of the marriage but also her homemaker non-economic contributions. *Marocco v. Marocco*, 571 A.2d 572 (R.I.1990).

We recognize that a finding of marital estate value made by a trial justice and his or her determination of its equitable assignment to the respective parties is a discretionary call that should not be overturned absent a showing of an abuse of discretion on the part of the trial justice. *Stanzler*, 560 A.2d at 345 (citing *Centazzo v. Centazzo*, 509 A.2d 995, 997 (R.I.1986)).

We are unable, however, to find from the master's amended decision how in fact his discretion was exercised. Consequently, we

---

3. Carol had worked full time as a registered nurse for sixteen years from the time of the marriage in 1972 until 1988, only taking time out to give birth to the two children born of the marriage, one in March, 1975 and the other in July, 1979.

are not able to determine if his general findings regarding the valuation and distribution of the marital estate were within or without the proper bounds of discretion.[4]

We are able, however, to conclude from the Master's amended decision that he appears to have erroneously grounded his denial of alimony to Carol on punitive considerations rather than rehabilitative ones. "Having found the Plaintiff 60% at fault, the Court need not go any future [sic]. It will be totally inappropriate to allow a wrongdoer to be compensated for faults created by that same individual. The request for alimony by the Plaintiff is denied." It is clear from the master's reasoning that he failed to consider that alimony and the equitable distribution of the marital estate "are different concepts and should not be blurred," *Murphy v. Murphy*, 471 A.2d 619, 624 (R.I.1984) and that he neglected to consider the needs of Carol as impacted by his earlier marital estate valuation and distribution in light of his additional finding that she was only "presently employed part time working two days per week earning some relatively insignificant amount at the present time." In neglecting to do so, he erred. *Sattari v. Sattari*, 503 A.2d 125, 128 (R.I.1986); *Fisk*, 477 A.2d at 958; *Marocco*, 571 A.2d at 574.

The record discloses to us that a final judgment of divorce was entered on January 3, 1997. No claim is made here on appeal that the entry of that final judgment should be disturbed. The only issues presented here on appeal relate to the master's distribution of the marital estate and his denial of Carol's request for alimony. We sustain Carol's appeal as to those matters, and we remand this case to the Family Court with instructions to reconsider both the distribution of the marital estate and the denial of Carol's request for alimony. For that purpose, the case is remanded to the Family Court for further proceedings in accordance with this opinion.

WEISBERGER, C.J., and FLANDERS, J., did not participate.

---

4. The master's findings are stated as follows:

"(3) There was in fact a disproportionate contribution by the Defendant (George) as to acquisition and preservation of the respective estates. Neither party contributed towards the appreciation as such but for substantially greater monetary contributions by the Defendant.

(4) The Plaintiff (Carol) contributed much more to the services as homemaker and the Defendant's contribution in that regard the Court will find to be minimal at best."