**Josephine K. HORTON**

v.

**Duane M. HORTON.**

No. 2004–353–Appeal.

Supreme Court of Rhode Island.

Feb. 27, 2006.

M. Teresa Paiva–Weed, Newport, for Plaintiff.

Christopher E. Friel, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

### Introduction

The defendant, Duane M. Horton, appeals from a Family Court decision pending entry of final judgment of divorce. Specifically, the defendant challenges the trial justice's assignment of property and the award of alimony, health insurance coverage, and custody of the parties' two children to the plaintiff, Josephine K. Horton.[1] The parties were directed to appear and show cause why the issues raised in this appeal should not be decided without further briefing and argument. Because we are of the opinion that cause has not been shown, we proceed to decide the appeal at this time. For the reasons set forth herein, we affirm the decision of the Family Court in part and vacate it in part.

### Facts and Travel

Josephine was born in Bulgaria, and, while still living there, she became acquainted with Duane through an adult "pen pal" service. After corresponding for several months, Duane traveled to Bulgaria to meet Josephine in person. Upon his return to the United States, Duane arranged to obtain a fiancée visa for Josephine and, when he obtained the visa, Josephine moved to the United States and married Duane on June 26, 1993.

The parties resided at Duane's premarital home in Portsmouth, Rhode Island, throughout the marriage. There were two children born of the marriage, namely Sophia Nicole Horton, who was born on May 12, 1995, and Erik Mitchusson Horton, who was born on April 11, 1998.

At some point during the marriage, irreconcilable differences arose between the parties. According to Duane, Josephine was irresponsible with money and, without Duane's knowledge, accumulated a significant amount of debt in a short period of time, which resulted in her having to declare bankruptcy.[2] According to Josephine, Duane was extremely controlling with respect to all aspects of her life, particularly the financial aspects. In addition, Josephine testified at the trial in Family Court that she was subjected to emotional abuse by her then husband, and that that emotional abuse was the primary reason for her filing for divorce.

The petition and counterclaim for divorce were heard in the Newport County Family Court on various dates in February and March of 2004. The court rendered a decision on June 7, 2004, and Duane filed a timely appeal.

On appeal, Duane points to five alleged errors by the trial justice. First, he contends that the trial justice exceeded his

---

1. For the sake of clarity, we shall refer to the parties by their first names throughout this opinion.

2. Duane also contends that Josephine had at least two extramarital affairs during the course of the marriage, and he attributes the breakdown of the marriage, at least in part, to those affairs. The trial justice found, however, that the record contained no evidence that Josephine had had an extramarital affair prior to the commencement of the divorce proceedings. He further found that both parties had sought relationships with members of the opposite sex, but that they had not done so until after the divorce proceedings had commenced.

authority by awarding medical coverage to Josephine for a period of three years, provided she remains unmarried. Next, Duane asserts that the trial justice improperly included as a marital asset Duane's one-quarter interest in real estate located at 10 Bickel Court, Sterling, Virginia (the Virginia real estate). Duane also contends that it was error for the trial justice to award Josephine rehabilitative alimony in the amount and for the duration that he ordered. Next, Duane argues that the trial justice abused his discretion in awarding Josephine what Duane contends was a disproportionate share of the marital estate. Finally, Duane contends that the trial justice abused his discretion in awarding Josephine sole custody of the minor children.

## Standard of Review

This Court will not disturb a trial justice's findings of fact· in a divorce action unless he or she has "misconceived the relevant evidence or was otherwise clearly wrong." *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1097 (R.I.2005) (quoting *Stephenson v. Stephenson*, 811 A.2d 1138, 1141 (R.I.2002)); *see also Cardinale v. Cardinale*, 889 A.2d 210, 217 (R.I.2006). Consequently, absent a showing that the trial justice either improperly exercised or abused his or her discretion, this Court will accept the factual findings of the trial justice. *Cardinale*, 889 A.2d at 217–18.

## Analysis

### I

### The Award of Medical Coverage

Duane's first argument on appeal is that the trial justice's order requiring him to maintain Josephine as a beneficiary of his medical insurance policy, as long as she

is unmarried, for a period of three years, is contrary to the provisions of The Insurance Continuation Act, G.L.1956 § 27–20.4–1. We agree.

The Insurance Continuation Act provides in relevant part as follows:

"The eligibility [to remain a named beneficiary of the insurance policy of the spouse who is a participant in the health plan] shall continue as long as the original member is a participant in the plan or health maintenance organization and until *either one of the following* shall take place: (1) the remarriage of either party to the divorce; or (2) until a time as provided by the judgment for divorce." Section 27–20.4–1(a) (emphasis added).

Pursuant to the Family Court's decision in this case with respect to medical insurance coverage as it currently reads, Duane would be required to maintain Josephine as a beneficiary of his insurance policy for a period of three years, even if he were to remarry during that time. It is our opinion that such a situation would be contrary to the plain meaning of § 27–20.4–1.[3] The statute unambiguously provides that eligibility will cease in *either* of two situations, one of which being the remarriage of either party. *See generally L'Heureux v. L'Heureux*, 770 A.2d 854, 856–57 (R.I. 2001).

Accordingly, we vacate the Family Court decision insofar as it requires Duane to maintain Josephine as a beneficiary of his medical insurance policy, even in the event of his remarriage, for a period of three years, and we instruct the Family Court to modify its decision in a manner consistent with this opinion.

---

3. *See, e.g., L'Heureux v. L'Heureux*, 770 A.2d 854, 857 (R.I.2001) ("When the language of a statute is clear and unambiguous, we must interpret the statute literally and give the words of the statute their plain and ordinary meanings.").

## II

### Determination and Assignment of Marital Assets

Duane's next contention on appeal is that the trial justice abused his discretion in determining the extent of the marital estate and also in determining how it should be assigned. Specifically, he asserts that the trial justice's inclusion of Duane's one-quarter interest in the Virginia real estate was clearly erroneous. In addition, he challenges the trial justice's award to Josephine of 58 percent of the entire marital estate, which Duane contends is disproportionate and the result of the trial justice's misconception of the evidence presented at trial.

■ The justices of the Family Court are vested with broad discretion as they seek to fairly divide marital property between the parties in divorce proceedings. *Stephenson*, 811 A.2d at 1141. It is well settled in this jurisdiction that trial justices responsible for equitably distributing property in a divorce action must engage in a three-step process. *Id.; see also Olivieri v. Olivieri*, 760 A.2d 1246, 1248 (R.I. 2000). First, the trial justice must "deter-

mine which assets are 'marital property' and which are 'non-marital property.'" *Stephenson*, 811 A.2d at 1141 (quoting *Olivieri*, 760 A.2d at 1248). Next, the trial justice must consider the several factors set forth in G.L.1956 § 15–5–16.1 before then distributing the estate in accordance with those factors.[4] *Stephenson*, 811 A.2d at 1141.

Because our review of the record reveals that the trial justice in this case did not misconstrue material evidence, we uphold his decision determining the extent of the marital estate and in distributing the marital assets.

### A

### The Virginia Real Estate

■ We now address Duane's contention that the trial justice clearly erred when he included Duane's one-quarter interest in the Virginia real estate as one of the marital assets. We recognize that ordinarily only the *appreciation in value* of property held in the name of one of the spouses prior to the marriage should be assigned as a marital asset. *See* § 15–5–16.1(b).[5] In this case, however, the parties

4. General Laws 1956 § 15–5–16.1(a) requires the trial justice to consider the following factors:

"(1) The length of the marriage;
"(2) The conduct of the parties during the marriage;
"(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;
"(4) The contribution and services of either party as a homemaker;
"(5) The health and age of the parties;
"(6) The amount and sources of income of each of the parties;
"(7) The occupation and employability of each of the parties;
"(8) The opportunity of each party for future acquisition of capital assets and income;

"(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;
"(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;
"(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and
"(12) Any factor which the court shall expressly find to be just and proper."

5. Section 15–5–16.1(b) states:
"The court may not assign property or an interest in property held in the name of one of the parties if the property was held by the party prior to the marriage, but may assign income which has been derived from

stipulated on the record to the inclusion of Duane's one-quarter interest in the real estate as a marital asset, without limiting the inclusion to only the appreciation in value. Consequently, the trial justice's inclusion of that one-quarter interest was not erroneous.

## B

### The Award of 58 Percent of the Marital Estate

Duane also argues that the findings of fact which the trial justice made prior to ruling on the allocation of the marital estate were not supported by the evidence and resulted instead from the trial justice's misconstruction or misconception of the testimony presented at trial. Specifically, Duane contends that it was error for the trial justice to find that "[d]uring the [eleven] year marriage * * * the Defendant dominated the Plaintiff in all areas of her life" and that "the Defendant, was able to maintain this power and control over his wife by both economic domination and emotional abuse."

It is our opinion that these findings by the trial justice were supported by the evidence in the record, and our review of the record has revealed no instance in which the trial justice misconstrued or misconceived the testimony presented at trial. For example, as the trial justice noted, Josephine was required to obtain permission from Duane before she undertook ordinary daily tasks such as purchasing gasoline for the family's car. Further, unless she agreed to purchase gasoline at certain specific gas stations, such permission would be denied. Josephine conceded

during trial that she had become involved in what the trial justice characterized as a "quagmire of debt"; but she also testified that, from the time that that occurred, she was required to account for literally every cent that she spent—and her failure to do so would result in Duane's refusal to provide her with any money the following day.[6]

In addition, the record supports the trial justice's finding that Duane maintained inappropriate control over his wife by means of the manner in which he emotionally abused her. For example, Josephine testified that Duane was constantly "putting her down" and saying that she was stupid. In addition, she testified that participating in what she referred to as the "intimate" aspects of the marriage became "mandatory." Duane presented no evidence to contradict Josephine's testimony with respect to his controlling her, and it is our view that the trial justice properly construed the testimony and properly concluded that Duane had exerted undue financial and emotional control over Josephine during their marriage. Further, the trial justice carefully considered the factors enumerated in § 15-5-16.1 before proceeding to equitably distribute the property. Accordingly, we affirm the trial justice's award of 58 percent of the marital estate to Josephine.

## III

### The Award of Rehabilitative Alimony

Duane also contends that the trial justice's award of rehabilitative alimony to Josephine was arbitrary and capricious in

---

the property during the term of the marriage, and the court may assign the appreciation of value from the date of the marriage of property *or an interest in property which was held in the name of one party prior to the marriage which increased in value as a*

*result of the efforts of either spouse during the marriage."* (Emphasis added).

6. The trial justice also noted that nearly $20,000 in debt was discharged when Josephine filed for bankruptcy.

both amount and duration. We disagree. The award of alimony in Rhode Island is governed by § 15–5–16, which enumerates several factors that the trial justice must consider in making such an award. Section 15–5–16(b) states in pertinent part:

"(1) In determining the amount of alimony or counsel fees, if any, to be paid, the court, after hearing the witnesses, if any, of each party, shall consider:

"(i) The length of the marriage;

"(ii) The conduct of the parties during the marriage;

"(iii) The health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and,

"(iv) The state and the liabilities and needs of each of the parties.

"(2) In addition, the court shall consider:

"(i) The extent to which either party is unable to support herself or himself adequately because that party is the primary physical custodian of a child whose age, condition, or circumstances make it appropriate that the parent not seek employment outside the home, or seek only part-time or flexible-hour employment outside the home;

"(ii) The extent to which either party is unable to support herself or himself adequately with consideration given to:

" * * *

"(E) The opportunity of either party for future acquisition of capital assets and income;

" * * *

"(G) Any other factor which the court expressly finds to be just and proper."

In the instant case, the trial justice awarded Josephine "rehabilitative alimony in the amount of [one hundred twenty-five dollars ($125.00) ] per week for a period of five years * * * [p]rovided, however, [that] said alimony shall not commence until [Josephine] vacates the marital domicile." Duane contends that no evidence was introduced at trial concerning Josephine's financial needs and expenses. Our review of the trial justice's explicit findings of fact with respect to Josephine's financial situation reveals that that contention is inaccurate. Specifically, he noted that the parties had been married for eleven years and that Josephine had cared for the two children and performed all of the domestic duties of the home. In addition, he found that at the time of the trial, Josephine was earning $10.75 per hour (which amounted to approximately $10,000 per year) at a part-time job. The trial justice also noted that Josephine was responsible for caring for the two children, who were still very young, but that she intended to obtain a college degree. Further, he found that her ability to acquire assets was limited.

The trial justice also considered the financial circumstances of Duane, finding that Duane was in good health and had a civil service position with the United States Navy, for which he was paid nearly $80,000 per year. The trial justice also found that Duane had the potential to acquire substantial assets before retiring from his position. It is our opinion that the trial justice undertook a careful analysis of the facts and the statutory considerations for awarding alimony and that his award was not an abuse of discretion.

## IV

### The Award of Sole Custody of the Minor Children

Duane's fifth argument on appeal is that the trial justice abused his discretion in awarding Josephine sole custody of the minor children. Duane contends that

the trial judge based his decision to award sole custody to Josephine upon his erroneous finding that the parties were in total disagreement on issues concerning the children. Duane argues further that there is no evidence in the record of any disagreement between the parties with respect to the children other than a disagreement pertaining to the medical diagnosis of their minor son concerning an illness from which he suffers. We disagree with Duane's contention.

■■■ As an initial matter we note that, although the trial justice did comment in his decision that the parties were in a state of total disagreement on issues concerning the children, his decision was not based solely on that one finding of fact. On the contrary, the trial justice articulated with precision the factors set forth by this Court in *Pettinato v. Pettinato,* 582 A.2d 909, 913–14 (R.I.1990), which factors he was required to consider in order to determine the best interest of the children before arriving at the decision to vest custody in Josephine. As the trial justice correctly pointed out, the best interest of the children should not be determined by assessing any one of the *Pettinato* factors exclusively; rather, the judge must consider all of the relevant factors. *Sammataro v. Sammataro,* 620 A.2d 1253, 1254 (R.I. 1993).

The trial justice carefully weighed all the evidence, including both the testimony of the witnesses and the documentary exhibits, before making several specific findings of fact. First, the trial justice found that the children had lived with their mother their entire lives. In addition, he found that Josephine had attended to the children's medical and educational needs. The trial justice also found that to uproot the children from their mother's care would be detrimental to the children's welfare. Next, the trial justice found that the minor son had certain educational and medical needs that Duane had refused to recognize and accept and that the result of his refusal to recognize those needs had resulted in placing the burden of dealing with them solely on Josephine—a task which the trial justice found that Josephine had handled admirably.

The trial justice found that an award of joint custody was not in the best interest of the children in the instant case and was therefore inappropriate, citing this Court's decision in *Duke v. Duke,* 510 A.2d 430, 432 (R.I.1986) (holding that joint custody would have been detrimental to the well-being of the children where the divorcing parties were unable to maintain an amicable relationship). Our review of the record reveals that, in addition to being unable to agree about the medical diagnosis of their son (and, therefore, about his educational needs), the parties were also in disagreement about appropriate methods for disciplining the children.

Consequently, we hold that the trial justice's award of sole custody of the parties' minor children to Josephine was not an abuse of discretion.

### Conclusion

For the reasons stated, we affirm in part and reverse in part; we vacate the Family Court decision insofar as it requires Duane to maintain Josephine as a beneficiary of his medical insurance policy for a period of three years, even if he remarries. We affirm the decision of the Family Court in all other respects. The papers in this case may be returned to the Family Court with instructions to modify the decision to render it consistent with this opinion.